UNITED STATES of America, Appellee,

v.

**Michael Dennis JOYCE, Appellant.**

**No. 82–1602.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1982.

Decided Dec. 3, 1982.

---

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

Duane Miller, Oklahoma City, Okl., for appellant.

Thomas E. Dittmeier, U.S. Atty., Charles A. Shaw, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON and JOHN R. GIBSON, Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Michael Dennis Joyce was convicted after a jury trial on one count of attempting to possess cocaine with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1976) (Count I), and one count of traveling in interstate commerce to facilitate an unlawful activity in violation of 18 U.S.C. § 1952 (1976) (Count II). The trial court sentenced Joyce to a term of ten years imprisonment on Count I and a term of five years probation on Count II, to be served consecutively. A timely appeal was filed. Though Joyce raises several issues on appeal, we are primarily concerned here with his claim that the evidence presented at trial was insufficient to sustain his conviction.[1] For the reasons set forth herein, we reverse Joyce's conviction on each count.

I.

The facts as presented to the jury in this case are undisputed and based entirely upon the uncontradicted testimony of the government's only two witnesses: Robert Jones, a St. Louis police officer assigned to the Drug Enforcement Administration Task Force, and James Gebbie, a government informant.

During 1980, the St. Louis Metropolitan Police Department conducted what has been termed a "reverse sting operation," in which undercover police officers posed as drug sellers actively soliciting major drug transactions with reputed drug dealers. As part of that operation, government informant James Gebbie, who testified to having prior drug dealings with Joyce, contacted Joyce by telephone in September and early October, 1980, to inform Joyce about the prospective availability of drugs for purchase in St. Louis. Joyce told Gebbie to call back when Gebbie found out more definite information.

On October 20, 1980 Gebbie again called Joyce, this time informing Joyce that co-

---

1. We will also briefly discuss in Part III Joyce's contention that his right to a fair trial was violated by the district court's allowing the jury to hear and observe a change of plea by another defendant.

caine was available for purchase in St. Louis. Joyce indicated that he had twenty-two thousand dollars and would be in St. Louis the following day, October 21, 1980. Gebbie and Joyce agreed that twenty-two thousand dollars would be more than sufficient to purchase a pound of cocaine.

On October 21, 1980, Joyce flew from Oklahoma City, Oklahoma to St. Louis, Missouri, where he met Gebbie and undercover officer Robert Jones, who was posing as a cocaine seller. Jones and Gebbie took Joyce to a room in a local St. Louis hotel, where Joyce immediately asked to see the cocaine. Jones told Joyce that the cocaine was not in the hotel room, but could be easily obtained by Jones if Joyce was interested in dealing rather than merely talking. After Joyce professed his interest in dealing, Jones recited prices for various quantities of cocaine and Joyce. said that he could "handle" a pound of cocaine for twenty thousand dollars. Officer Jones then went to his office and obtained the cocaine.

When officer Jones returned to the hotel room, he handed Joyce a duct-tape wrapped plastic package said to contain a kilogram of cocaine. Without unwrapping the tape, Joyce immediately returned the package, stating that he could not see the cocaine. Jones then unwrapped about half of the tape covering the plastic package and handed the package back to Joyce. Joyce again returned the package to Jones and asked Jones to open up the package so that Joyce could examine the cocaine more closely. Jones answered that he would only open the plastic package if and when Joyce showed the money that he intended to use to purchase the cocaine. Joyce then replied that he would not produce his money until Jones first opened up the plastic package. After Jones persisted in asking Joyce to produce his money, Joyce again refused, stating that he would not deal with officer Jones no matter how good the cocaine was. Realizing that Joyce was not going to show his money or purchase the cocaine, Jones told Joyce to leave and Joyce left, with no ap-parent intention of returning at a later time to purchase any cocaine.

As Joyce left the hotel, he was arrested by DEA agents. A search warrant was thereafter obtained and used to search Joyce's luggage revealing twenty-two thousand dollars in cash.

## II.

The issue before us is whether the evidence, taken in its entirety and viewed most favorably to the government, is sufficient to prove beyond a reasonable doubt that Joyce attempted to purchase cocaine with the intent to distribute. To resolve this issue we must determine whether Joyce's conduct crossed that shadowy line dividing acts of "mere preparation" to commit a crime and acts constituting an "attempt."

The government argues that Joyce's attempt to possess cocaine was established by evidence that he traveled from Oklahoma City to St. Louis with twenty-two thousand dollars pursuant to a previously discussed drug purchase arrangement, that he expressed an initial willingness to deal with Jones, and that he agreed with Jones on the price for a pound of cocaine. Furthermore, the government adds, Joyce would have purchased the cocaine had it not been for the disagreement between Joyce and Jones resulting from Jones' refusal to open the plastic bag containing the purported cocaine until Joyce first showed his money. The government points out that Jones was acting in compliance with DEA guidelines which prohibit illegal drugs from going into the physical possession of persons under investigation.

Joyce, on the other hand, contends that his conduct did not rise to the level of an attempt to possess cocaine because while he admittedly possessed sufficient money to purchase the cocaine at the agreed upon price, he ultimately refused either to purchase the cocaine or to produce his money. He thus had abandoned any designs he might have had of obtaining cocaine and

distributing it before taking the necessary and overt steps of producing the money and obtaining the cocaine.

■ Although there is no comprehensive statutory definition of attempt in federal law, federal courts have rather uniformly adopted the standard set forth in Section 5.01 of the American Law Institute's Model Penal Code (Proposed Official Draft 1962)[2] that the requisite elements of attempt are (1) an intent to engage in criminal conduct, and (2) conduct constituting a "substantial step" towards the commission of the substantive offense which strongly corroborates the actor's criminal intent. *United States v. Manley,* 632 F.2d 978, 987 (2nd Cir.1980), *cert. denied, sub nom. Williams v. United States,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *United States v. Snell,* 627 F.2d 186, 187 (9th Cir.1980), *cert. denied,* 450 U.S. 957, 101 S.Ct. 1416, 67 L.Ed.2d 382 (1981); *United States v. Monholland,* 607 F.2d 1311, 1319–20 (10th Cir. 1979); *United States v. Mandujano,* 499 F.2d 370, 376–77 (5th Cir.1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975). While we adopt this standard here, we are also mindful of Judge Learned Hand's candid, yet poignant, observation that a verbal formulation aimed at dividing mere preparation from attempt is, in itself, not particularly useful. *United States v. Coplon,* 185 F.2d 629, 633 (2nd Cir.1950), *cert. denied,* 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952). Indeed, whether conduct represents a "substantial step" toward the commission of the criminal design is, in Justice Holmes' words, "a question of degree," necessarily depending on the factual circumstances peculiar to each case. *Commonwealth v. Peaslee,* 177 Mass. 267, 272, 59 N.E. 55, 56 (1901). However, as the Tenth Circuit analyzed in *United States v. Monholland,* 607 F.2d 1311, 1318 (10th Cir.1979):

> The cases universally hold that mere intention to commit a specified crime does not amount to an attempt. It is essential that the defendant, with the intent of committing the particular crime, do some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in the commission of the particular crime.

■ With this in mind, we conclude that even assuming Joyce went to St. Louis intending to purchase cocaine, there was clearly insufficient evidence to establish that he engaged in conduct constituting a "substantial step" toward the commission of the crime of possession of cocaine with the intent to distribute. Whatever intention Joyce had to procure cocaine was abandoned prior to the commission of a necessary and substantial step to effectuate the purchase of cocaine. The attempt, of course, need not be successful, but generally the abortion of the attempt occurs because of events beyond the control of the attemptor. As the court recognized in *Monholland,* 607 F.2d 1319, "the [attemptor's] act must have passed the preparation stage so that if it is not interrupted extraneously, it

---

**2.** The relevant portion of the Model Penal Code provides:

Section 5.01. Criminal Attempt.

(1) Definition of Attempt. A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:

(a) purposely engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or

(b) when causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing or with the belief that it will cause such result without further conduct on his part; or

(c) purposely does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

(2) Conduct Which May Be Held Substantial Step Under Subsection (1)(c). Conduct shall not be held to constitute a substantial step under Subsection (1)(c) of this Section unless it is strongly corroborative of the actor's criminal purpose . . . .

Model Penal Code (Proposed Official Draft 1962).

will result in a crime." *Also see Mims v. United States,* 375 F.2d 135, 148 n. 40 (5th Cir.1967); *People v. Miller,* 2 Cal.2d 527, 42 P.2d 308, 309 (1935). Here it is undisputed that Joyce, despite having both the opportunity and ability to purchase the cocaine at the agreed upon price, unambiguously refused either to produce his money or to purchase the cocaine. This effectively negated the government's effort to consummate the sale.

This case is comparable to the case of *People v. Miller,* 2 Cal.2d 527, 42 P.2d 308 (1935) where the defendant announced his intention to kill another, obtained a .22 caliber rifle, pursued his intended victim into an open field carrying the .22 caliber rifle, and after loading the rifle apparently changed his mind and voluntarily surrendered the rifle to a third person standing nearby. The Supreme Court of California concluded that the defendant's conduct did not rise to the level of an attempted murder. *Id.* at 310. Similarly in *Wooldridge v. United States,* 237 F. 775 (9th Cir.1916), the defendant, pursuant to a previous arrangement, met a sixteen-year-old girl in a closed store, presumably intending to have intercourse with her. However, after receiving some advice from a friend who was at the store, the defendant decided not to carry through with his criminal intent and left the store without ever approaching the girl. The Ninth Circuit reversed the defendant's conviction for attempted rape, holding that while the defendant may have gone to the store with the intent of having intercourse with the girl, he never committed an overt act toward the commission of the intended crime. *Id.* at 779. Thus, in these two cases

and in the instant case, the defendant had the opportunity and ability to commit the completed offense, yet refused to engage in conduct constituting a "substantial step" toward commission of the completed offense.

The government, however, urges that Joyce's initially expressed interest in purchasing a pound of cocaine from Jones at the stated price and his momentary possession of the wrapped package said to contain a kilogram of cocaine constituted a substantial step toward possession of cocaine with the intent to distribute.[3] We disagree. While Joyce professed a desire to purchase cocaine during his preliminary discussions with Jones, Joyce never attempted to carry through with that desire by producing the money necessary to purchase and hence ultimately possess the cocaine. And, although Jones gave Joyce the sealed and wrapped package said to contain a kilogram of cocaine, Joyce did not open the package but immediately returned the package to Jones who in turn refused to open the package because Joyce refused to produce the money necessary to effectuate the purchase of a pound of cocaine. Thus, all we have here is a preliminary discussion regarding the purchase of cocaine which broke down before Joyce had committed any "overt act adapted to, approximating, and which in the ordinary and likely course of things [would] result in the commission of the [crime of possessing cocaine with the intent to distribute]" *Monholland,* 607 F.2d 1318.[4]

We also find unpersuasive the government's claim that Joyce would have purchased the cocaine had it not been for Jones' refusal to open the package of co-

---

3. It should be noted that Joyce's momentary possession of the wrapped and sealed package containing a kilogram of cocaine is not the same possession that Joyce was charged with attempting. Joyce was indicted and tried for attempting to purchase and hence possess a pound of cocaine with the intent to distribute, not with attempting momentarily to possess a kilogram package of cocaine belonging to officer Jones.

4. In *Monholland,* the Tenth Circuit considered whether a defendant's preliminary discussion with an undercover officer regarding the price at which the defendant could purchase dynamite similar to the sample held by the undercover officer constituted an attempt to receive in interstate commerce an explosive. The court concluded that defendant's preliminary discussion did not constitute an overt act aimed toward commission of the crime defendant was charged with attempting. *Id.* at 1320.

caine. We simply fail to see why Joyce's motive for refusing to commit a "substantial step" toward possession of the cocaine is particularly relevant. Joyce's motive for refusing to purchase the cocaine here is no different than had he refused to purchase because he disagreed with Jones as to the price for which the cocaine was offered. And, while we may agree with the government's suggestion that Joyce, who was presumably "street-wise," may have been tipped off that Jones was a DEA undercover agent when Jones refused to open the package, we fail to see how an increased awareness of the risk of apprehension converts what would otherwise be "mere preparation" into an attempt.

■ Finally, the government makes the rather novel suggestion that because Joyce was only one act away from the completed offense of possession of cocaine with the intent to distribute, he must, therefore, be guilty of attempting to commit the completed offense. First, Joyce was two acts, not one act, away from the completed offense. Before Joyce could have committed the offense of possessing cocaine with the intent to distribute he had to first produce the money necessary to effect the purchase of the cocaine and second take actual physical possession of, or exercise dominion and control over, the cocaine. He obviously could not distribute the cocaine before obtaining either actual or constructive possession of it. *United States v. Batimana,* 623 F.2d 1366, 1369 (9th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980). Nevertheless, whether conduct may be characterized as being one act or two acts away from the completed offense is not particularly helpful in determining if an attempt has been committed. For example, the defendant in *Miller* who while carrying a rifle pursued his intended victim into the open field was only one overt act away

from committing the completed offense of murder; all he had left to do was shoot the intended victim.[5] However, the defendant in *Miller,* as Joyce here, had not yet committed an overt act strongly corroborative of the firmness of his criminal purpose. Thus, in *Miller* and in this case the conduct which remained to be done, whether characterized as one act or two acts, was the very conduct which separated mere preparation from a substantial step toward commission of the completed offense.

The outright reversal of Count I carries with it the reversal of Count II as mere preparation for any illegal activity that was abandoned prior to the completion of the attempt charged.

### III.

Joyce also contends that his right to a fair trial was violated when the trial judge permitted the jury to hear and observe a change of plea of another defendant. Joyce points out that the prosecutor who represented the government during the change of plea was the prosecutor who represented the government in Joyce's case. Furthermore, while taking the change of plea, the trial judge, in the presence of the jury, made the following remark to the defendant who was changing his plea:

It's part of your constitutional right to have a jury hear your case and in a jury trial there are great protections. The protections make it difficult for convictions to take place and that is as it should be. The Government should not have an easy time of convicting although they should not have an impossible time. We ought to be fair to them but you have a right to a jury trial. Now just because you have that right doesn't mean you ought to do it. Every case is different. Each one is an individual case and in

---

**5.** If the defendant in *Miller* had shot and missed the intended victim he would have committed an attempted murder. *See* R.M. Perkins, *Perkins on Criminal Law,* 558 (1969). Similarly, in this case, if Joyce had given Jones the money

necessary to purchase the cocaine but Jones refused to give Joyce the cocaine, Joyce would have committed an attempt to possess cocaine with the intent to distribute.

some cases it's better to plead guilty than to go to trial.

The trial judge cautioned the jury on two separate occasions that the change of the plea had no relationship or connection to Joyce's case. The judge also explained that he took the change of plea in the jury's presence to save time and to avoid any inconvenience to the jury.

■ While not passing on its prejudicial effect, we strongly disapprove of the trial judge's conduct in permitting the jury to hear and observe another defendant's change of plea, however presented. The court should not have risked the possibility of prejudicing the jury in order to save time or avoid inconvenience. The Constitution requires that trials be fairly conducted and that a defendant's rights be scrupulously respected. *McGautha v. California,* 402 U.S. 183, 221, 91 S.Ct. 1454, 1474, 28 L.Ed.2d 711 (1970). Accordingly, the trial judge is charged with the responsibility of assuring that the trial is conducted as fairly as possible and with solicitude for the constitutional rights of the defendant. *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942); *United States v. Nelson,* 570 F.2d 258, 262 (8th Cir. 1978). It goes without saying that a defendant's right to a fair trial should not be attenuated in the interest of convenience or expediency.

Judgment reversed.