**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**David Allen SCOTT,**
**Defendant-Appellant.**

**No. 84–5246.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 2, 1985.

Decided Aug. 5, 1985.

John Markham, II, San Diego, Cal., for plaintiff-appellee.

Cynthia G. Aaron, San Diego, Cal., for defendant-appellant.

Before HUG and BOOCHEVER, Circuit Judges, and GEORGE,* District Judge.

GEORGE, District Judge:

The appellant, David Allen Scott, was convicted by a jury of violating 21 U.S.C. § 841(a)(1) & 846 (1982) (attempted possession of a controlled substance with an intent to distribute it) and 21 U.S.C. § 843(b) (1982) (illegal use of a communications facility). Scott appeals his conviction, claiming that the district court abused its discretion in admitting evidence of a prior similar act and that the evidence presented at trial was insufficient, as a matter of law, to convict him of attempted possession of cocaine, with an intent to distribute it. We affirm.

## I.

### FACTS

On January 13, 1984, during a warranted search of a Chula Vista, California residence, a special agent of the Federal Drug Enforcement Agency ("DEA") answered a telephone call from a person who identified himself as David Scott and stated that he needed two ounces of cocaine. This caller said that he had $4,500 with which to purchase the cocaine. The DEA agent told the caller that this was enough money to make the purchase, but purposely gave him an incorrect address for the Chula Vista location. When the caller telephoned a second time, the agent gave him the correct address and stationed DEA agents outside the residence being searched.

Shortly after the second call, the appellant Scott drove his van up to the residence where the DEA agents were located and walked up to its door. Observing Scott's arrival, the agent who had received the Scott calls stationed himself behind the door. Before Scott could knock on the door, however, he became aware of the presence of one of the DEA agents who had been waiting outside the home. He called out for the agent to identify himself, which the agent did. The agent then placed Scott under arrest and began a search of his person.

In the meantime, the agent who was stationed inside the house, recognized Scott's voice as being that of the caller, opened the door, and aided in the arrest and search of Scott. As a result of this search, the DEA agents found a paper bag in Scott's back pocket, which contained exactly $4,500 in cash.

Prior to trial, the district court conducted a hearing on whether the Government should be permitted to introduce evidence seized during an earlier—September 9, 1983—warranted search of Scott's home. The Government argued, at that hearing, that this evidence reflected Scott's involvement in the repackaging and distribution of cocaine and was, therefore, relevant to his defense that he had intended to purchase the two ounces of cocaine on January 13, 1984, for his personal use. Over the objections of Scott's attorney, who argued that the presentation of this evidence would unduly prejudice his client, the trial court ruled that the fruits of the September 9, 1983 search were admissible.

At trial, the Government—again over Scott's objections—introduced the items seized during the September 9, 1983 search of Scott's home. The Government further introduced evidence concerning statements Scott had made about the purchase of a

---

* The Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

Lincoln Continental automobile for $23,800 with monies he had received from a $25,000 insurance settlement.

Immediately before and after the introduction of this evidence, the district court gave the jury a modified version of Model Ninth Circuit Jury Instruction No. 2.08. As stated after the jury had heard the prior act evidence, this instruction was as follows:

> You have just heard testimony that the defendant previously committed an act similar to the one charged herein. You may not consider this testimony in deciding if Mr. Scott committed the acts charged in this case. However, you may consider it for another purpose. If you are convinced by proof beyond a reasonable doubt and by independent evidence that the defendant committed the acts charged in this case, then you may consider this testimony of Agent Ashcraft to decide what the defendant's intent was when he committed the acts charged in this case.

As a part of his defense, Scott presented expert testimony that both the two ounces sought on January 13, 1984, and the items seized pursuant to the September 9, 1983 search of Scott's home were consistent with a personal use of cocaine, especially if the appellant "free-based" the drug.

After deliberation, the jury found Scott guilty of the two counts on which he was tried. (Third count for conspiracy to distribute a controlled substance had been voluntarily dismissed earlier by the Government).

On September 7, 1984, Scott was given concurrent prison sentences of forty months for the two counts of which he stood convicted, with a special parole term of three years for his violation of 21 U.S.C. § 843(b) (1982). On September 21, 1984, Scott filed a notice of appeal from his conviction. On November 28, 1984, the district court held that Scott's notice of appeal was late-filed due to excusable neglect and ordered that the notice be deemed timely-filed.

II.

## ANALYSIS

Scott bases his appeal upon two principal issues. First, he claims that the district court abused its discretion in admitting evidence of past bad acts in proof of his intent to distribute, rather than use, the cocaine sought on January 13, 1984. Second, the appellant argues that the evidence was insufficient, as a matter of law, to establish that he had engaged in a "substantial step" toward the commission of the crime of possession of a controlled substance with an intent to distribute it, so as to support a conviction for the attempt of that crime.

### A. The Admission of Prior Similar Act Evidence

The district court admitted the evidence seized during the September 9, 1983 search pursuant to Rule 404(b) of the Federal Rules of Evidence, which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Scott apparently admits that the contested evidence was relevant to his intent defense. Nevertheless, he maintains that the prejudice suffered by him by its admission outweighed its relevance to the Government's case. Furthermore, he argues that the district court did not even consider the prejudice to him before ruling in favor of admitting this evidence.

This court, in *United States v. Bettencourt*, 614 F.2d 214, 217 (9th Cir.1980) has held that "under either Rule 403 or Rule 404(b), in order for the evidence of prior similar acts to be admissible, its probative value must exceed the potential prejudicial effect of its admission." In the present case, the record of the pre-trial hearing on the contested evidence reflects that the dis-

trict court did examine the question of prejudice to the appellant and properly determined that the probative value of the evidence outweighed its possible prejudicial effect. Moreover, the district court appropriately acted to minimize any prejudicial effect to Scott by a careful instruction to the jury on the proper basis for its consideration of the evidence.

Scott also argues that the district court did not consider the Government's need for the prior act evidence before admitting it. *See United States v. Bailleaux*, 685 F.2d 1105, 1112 (9th Cir.1982). Although the appellate record is not clear as to whether the district court considered this factor in admitting the contested evidence, the Government's need for this evidence is rather apparent.

■ Intent, in the best of circumstances, is a difficult element to prove. It can usually be shown only by circumstantial evidence. Given the abortive nature of Scott's arrest, little evidence of intent, of either a direct or circumstantial nature, could have been found in the facts surrounding that arrest. Resort to prior similar act evidence seems to have been essential in this case.

As a final argument on this issue, Scott maintains that, even if some prior act evidence were admissible, the district court abused its discretion in failing to limit that evidence to only that least prejudicial to him. *See id.* at 1109.

Part of Scott's argument on this point is a renewed attack on the district court's general refusal to exclude the evidence of the September 9, 1983 search. In this regard, Scott notes that he was never convicted of any offense as a result of this search. There is, however, no requirement that there be a conviction for a prior wrongful act before it becomes admissible under Rule 404(b). There need only exist clear and convincing proof that the defendant committed the act. *United States v. Espinoza*, 578 F.2d 224 (9th Cir.1978), *cert. denied*, 439 U.S. 849, 99 S.Ct. 151, 58 L.Ed.2d 151 (1979). The jury was properly instructed on this point.

As a second argument, Scott claims that a portion of the prior act evidence—that concerning the Lincoln Continental and the money found in his briefcase—improperly reflects upon his financial condition. *See United States v. Green*, 648 F.2d 587 (9th Cir.1981). The evidence concerning the automobile, however, was introduced only after defense counsel attempted to raise an inference that the money and cocaine seized from Scott on September 9, 1983, were the proceeds of his $25,000 insurance settlement, rather than of an ongoing drug business. The money, itself, was necessary to show that Scott was a distributor of a controlled substance, rather than merely a user.

When presented with the district court's limiting instruction to the jury, the evidence obtained during the September 9, 1983 search of Scott's home was properly admitted under Rules 403 and 404(b) of the Federal Rules of Evidence.

### B. The Sufficiency of the Evidence

As his second issue on appeal, Scott claims that there was insufficient evidence that he took a "substantial step" toward the commission of the crime of possessing a controlled substance with the intent to distribute it, so as to be guilty of its attempt.

■ To sustain a conviction for attempt, the Government must have proven that the appellant had culpable intent and that he took a "substantial step" towards the commission of the crime, which step strongly corroborates the appellant's criminal intent. It is not enough that the defendant simply "prepared" to commit the crime. *United States v. Taylor*, 716 F.2d 701 (9th Cir. 1983); *United States v. Snell*, 627 F.2d 186 (9th Cir.1980) (per curiam), *cert. denied*, 450 U.S. 957, 101 S.Ct. 1416, 67 L.Ed.2d 382 (1981).

The difference between making preparations and taking a substantial step would appear to be one of degree. *United States v. Joyce*, 693 F.2d 838 (8th Cir.1981), *citing Commonwealth v. Peaslee*, 177 Mass. 267,

272, 59 N.E. 55, 56 (1901). In an attempt to define this difference, the United States Court of Appeals for the Second Circuit has held that

> [a] substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime, and thus the finder of fact may give weight to that which has already been done as well as that which remains to be accomplished before the commission of the substantive crime. *United States v. Jackson, supra,* 560 F.2d at 118–19. In order for behavior to be punishable as an attempt, it need not be incompatible with innocence, yet it must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate that statute.

*United States v. Manley,* 632 F.2d 978, 987–88 (2d Cir.), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1980).

In *Manley,* the Second Circuit also cited, with approval, the Tenth Circuit's position that a substantial step must entail an "overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime." *Id.* at 988, quoting *United States v. Monholland,* 607 F.2d 1311, 1318 (10th Cir.1979). *See also United States v. Taylor, supra* at 712. Nevertheless, the *Manley* court went on to acknowledge the imprecision of this definition, stating that

> [w]hether conduct represents a substantial step towards the fulfillment of a criminal design is a determination so dependent on the particular factual context of each case that, of necessity, there can be no litmus test to guide the reviewing courts.

*United States v. Manley, supra* at 988.

■ In the present case, the Government's evidence, if taken as proven, established three overt acts. The first two were the telephone calls to the Chula Vista residence by an individual whose voice was later identified as being that of Scott. The third act was the appearance of Scott at the residence, carrying the exact amount of money mentioned by the earlier caller as the sum of money he had to make the purchase. The record does not show that Scott made contact with any controlled substance, that he showed his money to the DEA agents, or that he and the agents ever agreed on the terms of the sale.

In the latter regard, the transcript of the first telephone call contains mention of only the acknowledgement of the DEA agent who answered the call that $4,500 was "enough for 2 ounces."

Scott maintains that his telephonic contact with the DEA agent and the subsequent visit to the Chula Vista residence were "exploratory" in nature, rather than in the furtherance of his intent to purchase. We do not agree. Rather, we find the circumstances of the present case to be similar to those found in *United States v. DeRosa,* 670 F.2d 889 (9th Cir.1982). *DeRosa* involved a drug transaction between an alleged dealer, named DeSantis, and a government agent and an informant. Another defendant, named Ponticelli, had arranged the sale. On the day set for the sale, DeSantis demanded to see the $32,000 promised by the agent and the informant. After viewing the money, DeSantis left, saying that he wanted to complete the deal that evening. Subsequently, however, DeSantis and Ponticelli became aware that they were under government surveillance and the sale was never consummated. Nevertheless we upheld the conviction.

Although, in the present case, the appellant had no opportunity to demand to see the cocaine before he was arrested, his appearance at the Chula Vista residence, with the $4,500 he had agreed to pay for the two ounces of cocaine, was strongly corroborative of his criminal intent. Thus, the jury could have found beyond a reasonable doubt, from the evidence presented it, that this act was "adapted to, approximating, and ... in the ordinary and likely course of things [would have] result[ed] in,

the commission of the [intended] crime," *United States v. Manley, supra* at 988, and that it was, therefore, a substantial step toward the consummation of Scott's criminal intent.

In so concluding, we distinguish the present case from that in *United States v. Joyce, supra,* in which the appellant abandoned his intent to purchase and possess a controlled substance prior to his arrest.

### III.

### CONCLUSION

The judgment of the district court is AFFIRMED.