**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 94-5588

JAMES NEAL, III, a/k/a Sonny,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Charles E. Simons, Jr., Senior District Judge.
(CR-94-27)

Argued: February 2, 1996

Decided: March 20, 1996

Before ERVIN and MOTZ, Circuit Judges, and BLAKE,
United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Ervin and Judge Blake joined.

_____

**COUNSEL**

**ARGUED:** John Frank Hardaway, Columbia, South Carolina, for
Appellant. Marvin Jennings Caughman, Assistant United States
Attorney, Columbia, South Carolina, for Appellee. **ON BRIEF:**
J. Preston Strom, Jr., United States Attorney, Columbia, South Caro-
lina, for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

James "Sonny" Neal, III, was convicted by a jury of one count of distribution of cocaine, one count of distribution of cocaine base (crack), and one count of attempted distribution of crack. In this appeal, he contends that the trial court erred in: (1) admitting evidence of unrelated prior bad acts; (2) permitting a witness to testify concerning statements of an alleged co-conspirator; and (3) refusing to grant a judgment of acquittal as to the attempt offense. Finding no reversible error, we affirm.

I.

In September, 1993, police arrested Greg Burris on drug charges. Hoping to receive favorable treatment, Burris agreed to help police in the investigation of Neal, from whom he claimed to have previously purchased crack cocaine. Pursuant to this plan, on October 18, 1993, Burris drove into Neal's neighborhood on the outskirts of Rock Hill, South Carolina with $400 of government funds, intending to purchase a quarter-ounce of crack cocaine from Neal. After failing to find Neal at his home, Burris located Neal nearby at his mother's house. Burris asked to purchase the quarter-ounce of crack from Neal but before the sale could be completed, Neal and his younger brother began fighting. Neal told Burris to return in a half-hour. Upon Burris's return, Neal directed him to a nearby dead-end street. Neal arrived there a few minutes later and told Burris that he had been able to obtain only an eighth of an ounce of crack.**1** Burris purchased the smaller amount with $240 in government funds. Before parting, Neal agreed to sell Burris a half-ounce of crack the next day.

The next day Burris returned to Neal's neighborhood to purchase the half-ounce and again located Neal at his mother's house. Once again Neal directed Burris to the nearby dead-end street. When Neal arrived a few minutes later with the half-ounce, Burris purchased the drugs with $700 in government funds.

_____

**1** Lab testing later classified the substance as cocaine rather than crack.

2

The parties did not meet for a third sale until January 12, 1994. Burris again drove to Neal's neighborhood and located Neal near his mother's house. Burris asked Neal, "Could I get that ounce?" Neal responded, "It would be a little while on that," and told Burris "to come back around 3:00 [p.m.]." The two then parted. While these negotiations were taking place, or shortly thereafter, Michael "Hooley" Douglas, who lives with Neal's sister, saw a van occupied by police officers in the neighborhood. An officer testified that Douglas spotted and recognized the officers as they sat in the van waiting to arrest Neal. Subsequently, when Burris returned to Neal's house at 3:00 p.m., Neal refused to complete the drug transaction. Burris asked, "What about tomorrow?" Neal simply replied, "No happenings."

Later that evening, as Burris was driving in another part of Rock Hill, he was hailed by his cousin, who introduced him to Wilmore Thrower. Burris had heard that Thrower was a street dealer for Neal. Burris testified that after Thrower began bragging about "how much dope he could sell in a day," Burris asked him "could he get me a half an ounce . . . and he said, yeah." Just then Neal drove up and summoned Thrower. Burris watched the two engage in a lengthy discussion after which Thrower returned to Burris's car and told him that "he wasn't going to be able to do no deals with[Burris]" because Hooley Douglas had spotted narcotics agents earlier in the day. According to Burris's testimony, Thrower informed him that "whenever Sonny [Neal] tell him [Thrower] not to move anything, he don't move nothing."

On the following day, January 13, 1994, Burris returned to Neal's neighborhood again in hopes of making the one-ounce purchase. Burris found Neal near his mother's house and asked if they could make a deal that day; Neal again said, "No happenings." Burris asked whether he could purchase the drugs from Wilmore Thrower and Neal told him that Thrower "ain't going to be able to do anything either." Burris then drove away.**2**

_____

**2** Police officers tape-recorded all of the Burris-Neal conversations and videotaped some of them. The tapes were played for the jury and introduced as exhibits at trial. Burris also testified as to these conversations. The above quotations of these conversations were taken from Burris's trial testimony.

As soon as Burris departed, police officers pulled up to the house. They observed Neal with a white paper bag in his hand standing in the yard talking with a friend. Recognizing the officers, Neal immediately fled to the back of his mother's house and through the back door. The officers followed Neal inside the house where they found the white paper bag in a trash can. Just outside the back door in an otherwise empty garbage can, the officers found an eighth of an ounce of crack. The crack was packaged in a cut-off corner of a plastic sandwich bag tied with red wire--similar to the packaging Neal had used in the previous transactions with Burris. In the back yard officers also found: a large number of plastic bags with their corners cut off; an empty plastic container buried in the ground; and a plastic refrigerator bag containing particles of crack residue. At Neal's nearby house the officers found a sheet of paper with Thrower's name and the telephone number where he could be reached.

A jury convicted Neal of two counts of distribution of a Schedule II controlled substance in violation of 21 U.S.C.§ 841(a)(1) (based on the events of October 18 and 19) and one count of attempt to distribute a Schedule II controlled substance in violation of 21 U.S.C. § 846 (based on the events of January 12 and 13).

II.

Neal first contends that the district court erred in permitting government witnesses to make comments portraying him as a high-level drug dealer, or "kingpin." Neal asserts that these statements were irrelevant to the charges brought against him and constituted inadmissible evidence of prior bad acts.

Even if we agreed with Neal that the testimony was inadmissible, Neal invited the error and therefore it provides no basis for reversal. At trial, Neal did not object to any of the statements he now challenges, indeed, most were elicited by his own attorney from a government witness during cross-examination. At one point, the prosecutor even tried to warn Neal's attorney about pursuing a line of questioning relating to the defendant's prior conduct, but Neal's attorney persisted. Under these circumstances, Neal "cannot complain of error which he himself has invited." United States v. Herrera, 23 F.3d 74, 75 (4th Cir. 1994) (quotation omitted).

4

III.

Neal next contends that the district court erred in admitting hearsay testimony. Neal argues that the district court should not have permitted Burris to testify at trial concerning statements made by Wilmore Thrower because the statements did not qualify for admission under Rule 801(d)(2)(E) of the Federal Rules of Evidence. Neal maintains that the statements did not qualify because they were not made during the course of a conspiracy with Neal. Additionally, Neal contends that the district court erred in failing to make an explicit finding that the statements were made in furtherance of the conspiracy.

As noted previously, Burris met Thrower, whom he knew to be a street dealer for Neal, after the third deal with Neal fell through. Thrower told Burris that he could arrange to sell him the crack he wanted. Immediately thereafter, Neal arrived on the scene and conferred at length with Thrower. Burris testified that when the two had finished conversing, Thrower told him that the sale could not take place because police officers were in the neighborhood. Thrower then made the statement that "whenever Sonny [Neal] tell[s] him [Thrower] not to move anything, he don't move nothing." Neal objected to Burris's testimony but, after a hearing, the district court denied the objection. The court ruled that the government had proved that a conspiracy existed between Neal and Thrower and that Burris's testimony was therefore admissible under Rule 801(d)(2)(E).

To admit testimony under this rule, a court must conclude "(1) that there was a conspiracy involving the declarant and the party against whom admission of the evidence is sought and (2) that the statements at issue were made during the course of and in furtherance of that conspiracy." United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992). The government must establish these elements by a preponderance of the evidence. Bourjaily v. United States , 483 U.S. 171, 175 (1987). A district court's decision to admit such testimony is reviewed for abuse of discretion. Blevins, 960 F.2d at 1255.

Neal's principal argument on this point is that Burris's testimony was inadmissible because the government provided no evidence of the conspiracy independent of the statements themselves. This court has not yet determined whether independent evidence of a conspiracy

5

is required. See United States v. Shores, 33 F.3d 438, 443 n.4 (4th Cir. 1994), cert. denied, 115 S. Ct. 1365 (1995). However, we have held that an alleged co-conspirator's statements may be considered in determining the existence of the conspiracy. Blevins, 960 F.2d at 1255. In this case we need not resolve whether a co-conspirator's statements alone could provide proof of the conspiracy because the government provided independent evidence to corroborate the existence of a conspiracy between Thrower and Neal.

In the challenged statements, Thrower told Burris that Neal had called off the deal because Hooley Douglas had seen narcotics agents in the area. This was corroborated through officers' testimony that Douglas had, in fact, spotted them and the deal was called off soon thereafter. The fact that Burris's deal with Thrower fell through immediately after the latter spoke with Neal supports the government's theory that Thrower worked for Neal. Additionally, on January 13, after Neal refused to deal with Burris for the second time and Burris asked about the possibility of getting drugs from Thrower, Neal said that Thrower "ain't going to be able to do anything either." This statement also indicated that Thrower worked for Neal. Finally, while searching Neal's house the police found a sheet of paper with Thrower's name and the telephone number where he could be reached. These three pieces of independent evidence sufficiently corroborate the out-of-court statements to establish a conspiracy by the preponderance of the evidence. See Shores, 33 F.3d at 443; United States v. Clark, 18 F.3d 1337, 1342 (6th Cir.), cert. denied, 115 S. Ct. 152 (1994).

Neal's remaining challenges to the testimony about Thrower's statements are also meritless. It is true that the trial court made no specific ruling that the statements were made during the course of and in furtherance of the conspiracy. However, our review indicates that there was sufficient evidence that Thrower made the statements during the course of and in furtherance of a conspiracy with Neal to sell drugs to Burris. Accordingly, the lack of an explicit trial court ruling to this effect does not require reversal. See Blevins, 960 F.2d at 1256 (although preferable for trial court to make explicit rulings, this court may affirm if our review of the record shows that the statement was made during the course of and in furtherance of the conspiracy).

6

Finally, while Thrower's statement did not immediately "further" the cause of the drug deal (Thrower merely related to Burris why the deal could not take place), it did further the conspiracy. Thrower stated that the deal could not take place due to police presence in the neighborhood. Escaping detection and apprehension by police officers furthered the continued viability of the conspiracy. See United States v. Troop, 890 F.2d 1393, 1404 (7th Cir. 1989) ("Avoiding detection by law enforcement officials clearly furthers the aims of a conspiracy."). Thrower's statement revealed to Burris the reason the deal could not take place immediately but did not negate the possibility that the deal would take place at a more opportune time--and thereby furthered the continued possibility of a sale to Burris.

For these reasons, the district court did not err in admitting the challenged statements.

IV.

Neal's final contention is that the evidence was insufficient to support his conviction of attempt to distribute crack. Although challenges to the sufficiency of the evidence must overcome a heavy burden, United States v. Hoyte, 51 F.3d 1239, 1244 (4th Cir.), cert. denied, 116 S. Ct. 346 (1995), Neal's challenge presents a close question.

Federal law provides no statutory definition of attempt. See United States v. Dworken, 855 F.2d 12, 16 (1st Cir. 1988). Precedent, however, establishes that a defendant can be convicted of an attempt only if the government proves beyond a reasonable doubt (1) culpable intent to commit the crime charged and (2) a substantial step towards the completion of the crime that strongly corroborates that intent. See United States v. McLamb, 985 F.2d 1284, 1292 (4th Cir. 1993); United States v. Sutton, 961 F.2d 476, 478 (4th Cir.), cert. denied, 506 U.S. 858 (1992). This definition is consistent with the definition of attempt found in the Model Penal Code. See Model Penal Code § 5.01(1)(c) (Proposed Official Draft 1985); see also United States v. McFadden, 739 F.2d 149, 152 (4th Cir.), cert. denied, 469 U.S. 920 (1984).

Neal does not contest the presence of culpable intent. He does assert, however, that the "evidence failed to prove any step [let alone

a substantial step] toward commission of the crime." A substantial step is more than mere preparation but less, obviously, than completion of the crime. Sutton, 961 F.2d at 478. There is no clear line between preparation and attempt. See United States v. Coplon, 185 F.2d 629, 633 (2d Cir. 1950) (Learned Hand, C.J.) ("The decisions are too numerous to cite, and would not help much anyway, for there is, and obviously can be, no definite line [between preparation and attempt]"), cert. denied, 342 U.S. 920 (1952). Whether conduct represents a substantial step depends on the "surrounding factual circumstances" and, therefore, such determinations are necessarily fact specific. See United States v. Gaines, 969 F.2d 692, 698 (8th Cir. 1992). On review, we examine the evidence in the light most favorable to the government, considering circumstantial as well as direct evidence and allowing the government all reasonable inferences, to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

Applying this standard, we believe there was sufficient evidence from which a rational juror could conclude that Neal attempted, as charged, to "distribute crack . . . on or about January 13, 1994." First, there was evidence from which a jury could determine that on January 12, Neal entered a definite agreement with Burris to sell him crack. No price was mentioned at that meeting and the abbreviated street language the parties used might not support a commercial contract. Yet, from the tape recording of the transaction, Burris's testimony about it, and evidence of the parties' prior deals within the previous three months, a jury could conclude that Neal expressly agreed to sell Burris a specific amount of crack--one ounce--at a specific price-- $1,400. Even so, if this was the sole step Neal took toward committing the crime, it might well be, as Neal claims, insufficient to prove an attempt to distribute crack. See United States v. Delvecchio, 816 F.2d 859, 862 (2d Cir. 1987) ("[A] verbal agreement alone, without more, is insufficient as a matter of law to support an attempt conviction.")

It was not, however, Neal's sole step. Neal not only agreed to sell Burris the crack, he also volunteered that it would take "a little while" to obtain the crack and directed Burris to come back to Neal's mother's house in forty-five minutes, at 3:00 p.m. The jury was entitled to

8

infer that Neal left the meeting to gather together the necessary amount of crack, which he planned to sell to Burris. We recognize that there is no direct evidence that this is what happened. Police officers did not follow Neal on January 12, nor did they unearth any illegal drugs, or even conduct a search of Neal, his house, or his mother's house on that date. Nevertheless, the inference that Neal left his meeting with Burris to get the drugs appears reasonable in view of the parties' previous dealings. On each prior occasion, the parties initially met and agreed to deal, as they did on January 12, at Neal's mother's house. On each prior occasion, Neal directed Burris to wait nearby, presumably so that he could gather together the crack, and only then was the sale completed. On January 12, Neal instructed Burris to come back in forty-five minutes rather than wait nearby, but Neal had to collect a significantly larger amount of crack.

Moreover, Neal's statements to Burris on January 12, including his express agreement to the sale, did not constitute the only evidence of his substantial step toward distributing crack "on or about January 13." When the police officers arrived to arrest Neal at his mother's house on January 13, Neal tried to evade them. After they arrested him, police found drug paraphernalia in the immediate area, including the same packaging (cut-off plastic bag corners and red tie) Neal had previously used in the other drug transactions. See United States v. Nelson, 6 F.3d 1049, 1051 (4th Cir. 1993) ("corners cut from sandwich bags . . . are commonly used to package drugs for sale"), cert. denied, 114 S. Ct. 2142 (1994). Police also found an eighth of an ounce of crack packaged and ready for sale. In isolation, perhaps neither Neal's statements on January 12 nor his conduct (including possession of a small amount of crack) on January 13, provided sufficient evidence to establish a substantial step. Cf. id. at 1052-53 (defendants' intent to distribute can be inferred from possession of approximately 400 grams of crack). However, when all the evidence is viewed collectively: Neal's agreement to sell Burris the crack; his instruction to Burris to wait because gathering the drug would take "a little while"; Neal's evasion when police arrived; Neal's possession of an eighth of an ounce of crack packaged for sale; and the drug paraphernalia found in the immediate vicinity, we believe there was sufficient evidence that Neal engaged in a substantial step strongly corroborative of his intent to commit the crime. Admittedly, the case was not airtight. The jury could have concluded that Neal's conduct

9

did not constitute attempt. But we cannot say that a properly instructed, reasonable jury could not have concluded that Neal was guilty of an attempt to distribute drugs.

Neal's argument to the contrary is based on the fact that when Burris arrived at Neal's mother's house at 3:00 p.m. on January 12,[3] Neal said, "No happenings" and repeated the phrase when Burris asked to buy crack the next day. Thus the sale was never consummated. Neal argues that no matter what his motive for doing so, by ultimately refusing to deal he never completed a substantial step. In fact, all that failure to complete a crime proves is just that--the crime was not completed. If completion of a crime was a necessary predicate to criminal prosecution, an attempt would never be criminal. When, as here, there is evidence of a substantial step strongly corroborative of intent to commit the crime, the fact that police presence ultimately caused Neal to forego completion of the crime in no way establishes an abandonment of the attempt. See, e.g. , United States v. Wilks, 46 F.3d 640, 645 (7th Cir. 1995).

Nor do the three cases upon which Neal relies assist him. Only one, United States v. Rosa, 11 F.3d 315 (2d Cir. 1993), cert. denied, 114 S. Ct. 1565 (1994), involved a defendant who, like Neal, was charged with attempt as a drug seller. In Rosa , the only evidence of a substantial step was of negotiations between the defendant and the would-be buyer. Id. at 338-39. Even in those negotiations, defendant Rosa never agreed to supply the drugs but consistently stated that he had to check with his source to see if the source could obtain the requested heroin. Id. Moreover, there was no evidence that Rosa ever made this inquiry. Id. Thus, unlike Neal, Rosa never agreed to sell the illegal drugs and, significantly, he was not apprehended shortly after such an agreement

_____

[3] The government suggests that Neal's appearance at his mother's house at 3:00 p.m. on January 12 constituted "reconnoitering the place contemplated for the commission of the crime," which we, following the Model Penal Code, have recognized as conduct that"may be considered a substantial step." See McFadden, 739 F.2d at 154. While Neal literally reconnoitered the place of the contemplated crime, that place was his mother's house, where the evidence indicated he was often found even when not engaging in criminal activity. Under these circumstances, we cannot regard his presence there as demonstrating a substantial step.

10

with contraband in his possession. Id. at 340. For these reasons, the Second Circuit's holding in Rosa is inapposite.

The remaining two cases are United States v. Delvecchio, 816 F.2d 859 (2d Cir. 1987), and United States v. Joyce , 693 F.2d 838 (8th Cir. 1982). The case at hand is readily distinguishable not only from Delvecchio and Joyce, but also from other drug cases where courts have ruled that evidence was insufficient to support attempt convictions. See United States v. Baker, 985 F.2d 1248 (4th Cir. 1993), cert. denied, 114 S. Ct. 682 (1994); United States v. Cea, 914 F.2d 881 (7th Cir. 1990); United States v. Mims, 812 F.2d 1068 (8th Cir. 1987). For example, Delvecchio involved "a verbal agreement alone" and no other evidence of a substantial step. 816 F.2d at 862. In Mims, there was no evidence of an agreement to buy, but only a single telephone call between a prospective seller and the defendant in which the parties did not discuss price or quantity and made no mention of illegal drugs. 812 F.2d at 1079. Most significantly, however, in addition to individual differences, a critical distinction separates the case at hand from Delvecchio, Joyce, Baker, Cea, and Mims: Neal was a prospective seller while these defendants were prospective buyers.

Although neither the parties nor any of the cases discuss the importance of this distinction, it seems obvious. Possession of small or moderate amounts of money is not illegal, or even suspicious, while possession of controlled substances, even in very small amounts, is illegal and may provide grounds to suspect other illegal activity, e.g., distribution. Accordingly, in order to prove a would-be seller guilty of attempted distribution, evidence that the defendant possesses even a small amount of an illegal substance can provide, as it does here, significant if not decisive evidence that he has taken a substantial step that strongly corroborates his intent to distribute. On the other hand, when the defendant is a would-be buyer, possession of some money proves little; only evidence that he possessed or sought to obtain the (usually large) amount of money necessary to complete the sale is probative. Compare Sutton, 961 F.2d at 478 (evidence sufficient to establish a substantial step where defendant is shown to possess the necessary funds); United States v. Scott, 767 F.2d 1308 (9th Cir. 1985) (same), with Baker, 985 F.2d at 1258 (evidence insufficient where defendant is not shown to possess or to have sought to possess the funds necessary to purchase cocaine for distribution). But see

11

Joyce, 693 F.2d at 841-43 (evidence insufficient even though defendant possessed the necessary funds for purchase).

Drafters of the Model Penal Code noted the distinction between possessing innocent and incriminating materials for use in allegedly committing a crime:

> [Existing case law] show[s] a tendency to make criminal the possession of materials to be employed in the commission of a crime when the materials [are] distinctively suited to criminal purposes. The incriminating character of such distinctive materials would usually be apparent to the actor himself, and his possession of them would generally manifest a major commitment to the crime contemplated.

Model Penal Code § 5.01 Commentary at 342-43 (Proposed Official Draft 1985). Unlike a prospective buyer of drugs for whom money is the "material" necessary for commission of the crime, the primary "material" required for a would-be seller is the drug itself, which is always "incriminating." Accordingly, where there is evidence of very recent and substantially similar prior transactions, the combination of a defendant's agreement to sell drugs and his being found in possession of that drug packaged for sale is sufficient to permit a reasonable jury to infer that the defendant has taken a substantial step corroborating his intent to sell the drug. In sum, weighing all the evidence, we conclude that a reasonable jury could find Neal had taken a step strongly corroborative of his intent to distribute crack.

For the foregoing reasons, Neal's convictions are

AFFIRMED.

12