**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4837**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

      v.

CLEVE ALEXANDER JOHNSON, a/k/a Cuz,

              Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, District Judge.  (1:08-cr-00233-TDS-1)

Submitted:  December 16, 2010        Decided:  January 31, 2011

Before NIEMEYER, KEENAN, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Seth A. Neyhart, STARK LAW GROUP, PLLC, Chapel Hill, North Carolina, for Appellant. Anna Mills Wagoner, United States Attorney, Randall S. Galyon, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Cleve Alexander Johnson (hereinafter, "Cleve" or "Johnson") appeals from his convictions for conspiracy to distribute methamphetamine and attempt to possess with intent to distribute methamphetamine and his resulting 200 month sentence. After carefully considering his claims on appeal, we affirm.

I.

Johnson first asserts that there was insufficient evidence to show that he and his cousin Melvin Johnson conspired during the charged time period. Johnson argues that the evidence concerning a November 2007 transaction predated the charged conspiracy[1] and that Melvin was not involved in any planned distribution of a pound of methamphetamine in December — he only acted a facilitator. According to Johnson, since the other conspirators were Government agents, the elimination of Melvin as a conspirator would clear Cleve, as well.

---

[1] Johnson also claims that the evidence of the deal before the charged dates in the conspiracy resulted in a constructive amendment to his indictment. However, the beginning and ending dates of a conspiracy are not elements of the offense, so proof of different dates could never raise the specter of conviction for a different crime. See United States v. Benson, 591 F.3d 491, 497 (6th Cir. 2010) (holding that "[w]hen an indictment uses the language 'on or about,' a constructive amendment does not exist when 'the proof offered regards a date reasonably near the date alleged in the indictment'").

2

A defendant challenging the sufficiency of the evidence faces a heavy burden. See United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997). "[A]n appellate court's reversal of a conviction on grounds of insufficient evidence should be 'confined to cases where the prosecution's failure is clear.'" United States v. Jones, 735 F.2d 785, 791 (4th Cir. 1984). In reviewing a sufficiency challenge, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). This court "ha[s] defined 'substantial evidence,' in the context of a criminal action, as that evidence which 'a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" United States v. Newsome, 322 F.3d 328, 333 (4th Cir. 2003).

Where the evidence supports differing reasonable interpretations, the jury will decide which interpretation to believe. United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). Furthermore, "[t]he Supreme Court has admonished that we not examine evidence in a piecemeal fashion, but consider it in cumulative context." United States v. Burgos, 94 F.3d 849, 863 (4th Cir. 1996). "The focus of appellate review, therefore, of the sufficiency of evidence to support a conviction is on the complete picture, viewed in context and in the light most

favorable to the Government, that all of the evidence portrayed."  Id.

Johnson's assertion that Melvin was a mere facilitator and, thus, could not be a conspirator is without merit.  This court held in Burgos that "a variety of conduct, apart from selling narcotics, can constitute participation in a conspiracy sufficient to sustain a conviction," such as supplying firearms, purchasing money orders for co-conspirators, or allowing co-conspirators to store narcotics or other contraband in one's home.  Burgos, 94 F.3d at 859.  We conclude that facilitating the sale of drugs falls into the above category.  Even if Melvin never intended to possess the drugs or distribute drugs himself, the evidence showed that he conspired with Cleve for Cleve to possess and distribute cocaine.

Moreover, the evidence could suggest that Melvin was more than a mere facilitator.  Melvin and Cleve had an ongoing methamphetamine "fronting" relationship whereby Melvin sold methamphetamine and paid Cleve with the proceeds.  In addition, Melvin was Cleve's "go-between."  The Government informant in this case negotiated the planned purchase of a pound of methamphetamine with Melvin, not Cleve, as the informant was not able to talk to Cleve directly.  In addition, Melvin was to be paid for the pound deal that he set up, so he had a vested interest in completing the deal and assisting Cleve in obtaining

4

methamphetamine for distribution. Based on the foregoing, we find that the evidence was sufficient to support Cleve's conspiracy conviction.

II.

Johnson next asserts that the evidence was insufficient to support his conviction for attempting to possess with intent to distribute methamphetamine because (1) both the methamphetamine and the seller were imaginary (set up by the Government) and (2) any agreement was dependent on Johnson's inspection of the methamphetamine which did not (and could not) happen.

"An attempt to commit a crime, which is recognized as a crime distinct from the crime intended by the attempt, punishes conduct that puts in motion events that would, from the defendant's point of view, result in the commission of a crime but for some intervening circumstance." United States v. Pratt, 351 F.3d 131, 135 (4th Cir. 2003). In order to prove an attempt, the Government must establish that:

> (1) the defendant had the requisite intent to commit a crime; (2) the defendant undertook a direct act in a course of conduct planned to culminate in his commission of the crime; (3) the act was substantial, in that it was strongly corroborative of the defendant's criminal purpose; and (4) the act fell short of the commission of the intended crime due to intervening circumstances.

5

Id.

Mere preparation is insufficient to establish an attempt. United States v. Sutton, 961 F.2d 476, 478 (4th Cir. 1992). However, the defendant need not commit the last act necessary before the actual commission of the substantive crime to be guilty of an attempt. Id. Whether a defendant has engaged in a substantial act beyond mere preparation is a factual question. Pratt, 351 F.3d at 136. Facts that strongly corroborate a defendant's criminal purpose and may constitute a substantial step toward commission of the substantive crime include: (1) lying in wait, searching for, or following the contemplated victim; (2) reconnoitering the place contemplated for the commission of the crime; (3) possession of materials to be employed in the commission of a crime; and (4) possession or fabrication of materials to be used in the commission of the crime, at or near the place contemplated for its commission. Id. at 135. Factual impossibility is not a defense to a charge of attempt. See United States v. Partida, 385 F.3d 546, 560 (5th Cir. 2004).

The evidence presented at trial, viewed in the light most favorable to the Government, establishes that Johnson was guilty of attempt. Johnson negotiated a set price for the methamphetamine, through Melvin and the informant, and indicated his intent to purchase the drugs, both before the intended buy

and after.  He procured the cash and went with Melvin to the informant's residence to contact the supplier (a Government agent).  The meeting was arranged, and Johnson drove to the appointed place with cash in hand.  Before he could make it to his destination, Government agents stopped him and seized the money.  This evidence was sufficient to support Johnson's attempt conviction.  See United States v. Scott, 767 F.2d 1308, 1312 (9th Cir. 1985) (upholding attempt conviction where defendant called seller expressing interest in purchasing cocaine and brought money to agreed upon place of sale); United States v. Williams, 704 F.2d 315, 321 (6th Cir. 1983) (affirming conviction where defendant inquired into possibility of purchasing cocaine and arrived at seller's house with funds).[2]

---

[2] Johnson cites United States v. Joyce, 693 F.2d 838 (8th Cir. 1982), in support of his contention that his actions did not constitute a substantial step.  In Joyce, the defendant traveled from Oklahoma to Missouri for the purpose of obtaining cocaine. When he met with the dealers — Government agents involved in a reverse sting operation — he asked to see the cocaine.  After some discussion regarding prices, the Government officers retrieved the cocaine from another location and handed to it Joyce in a plastic package wrapped with duct-tape.  Joyce asked the agents to open the package so that he could examine the cocaine.  The officers refused to open the package until Joyce showed them the cash he intended to use to purchase the drug. After a heated discussion, Joyce stated that he would not deal with the agents, and he left.  He was then arrested.  Id. at 840.

The Eighth Circuit found these facts insufficient to demonstrate a substantial step towards the completion of the offense, reasoning that Joyce, despite having both the (Continued)

III.

Johnson next asserts that the district court erred in failing to remove a sleeping juror. Because this issue was not raised in district court, we review for plain error. See Fed. R. Crim. P. 52(b). In United States v. Freitag, 230 F.3d 1019 (7th Cir. 2000), the Seventh Circuit discussed the standard for addressing the issue of sleeping or dozing jurors:

> If sleep by a juror makes it impossible for that juror to perform his or her duties or would otherwise deny the defendant a fair trial, the sleeping juror should be removed from the jury. See United States v. Kimberlin, 805 F.2d 210, 244 (7th Cir. 1986); United States v. Bradley, 173 F.3d 225, 230 (3d Cir. 1999); United States v. Springfield, 829 F.2d 860, 864 (9th Cir. 1987). However, a court is not invariably required to remove sleeping jurors, Springfield, 829 F.2d at 864, and a court has considerable discretion in deciding how to handle a sleeping juror, United States v. Wilcox, 50 F.3d 600, 603 (8th Cir. 1995). Reversal is appropriate only if the defendant was

---

opportunity and ability to purchase the drugs, unambiguously refused to do so. See id. at 841-42. A later Eighth Circuit case explains that part of the rationale underlying this opinion was the fact that Joyce, rather than the Government agents, terminated the events leading up to the sale. See United States v. Burks, 135 F.3d 582, 584 (8th Cir. 1998). Applying this rationale to Johnson's case, we conclude that it is distinguishable from Joyce. While Johnson did state that he wanted to examine the drugs prior to purchase, it was the officers who interrupted the proceedings by stopping Johnson and seizing his money. Rather than terminating the transaction, Johnson was driving to the location of the deal with the agreed-upon funds when police stopped his car. Further, after the deal was aborted, Johnson continued to deal with the informant and the Government agent in an attempt to purchase methamphetamine.

> deprived of his Fifth Amendment due process rights or his Sixth Amendment right to an impartial jury. <u>Springfield</u>, 829 F.2d at 864.

<u>Freitag</u>, 230 F.3d at 1023.

Here, there is no evidence that the juror was sleeping. At worst, the record reflects that the juror was tired and perhaps inattentive for an undefined period of time during the Defense's opening argument and the informant's direct testimony. In addition, once the court noticed the juror, the court took a momentary break and instructed the jury on the importance of being alert. Absent any evidence that the juror was unable to consider the case fairly, Johnson has failed to show error, much less plain error.

IV.

Finally, Johnson claims that methamphetamine offenses are treated more harshly than powder cocaine offenses, resulting in a violation of the Equal Protection Clause because methamphetamine offenses are more often than not committed by Caucasians. Because Johnson did not raise an objection on this basis below, his claim is reviewed for plain error. As Johnson presents no evidence or legal authority supporting the conclusion that (1) Caucasians are unequally impacted by methamphetamine sentencing statutes or (2) that any inequality

9

is not justified based on variables specific to methamphetamine offenses, he has failed to show error, much less plain error.

Accordingly, we affirm Johnson's convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED