UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4571

BONITA R. DEMBY,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CR-96-440)

Submitted: February 3, 1998

Decided: March 9, 1998

Before WILKINS and LUTTIG, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

JoAnne B. Butt, Alexandria, Virginia, for Appellant. Helen F. Fahey,
United States Attorney, Randy I. Bellows, Assistant United States
Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Bonita R. Demby was convicted by a jury of conspiracy to possess with intent to distribute and to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. § 846 (1994). She was sentenced to 235 months' imprisonment. On appeal, Demby alleges prosecutorial misconduct and also challenges certain evidentiary decisions by the district court, the sufficiency of the evidence, her sentence, and the district court's decision not to grant her a new trial. We find that all of Demby's claims are meritless. We affirm Demby's conviction and sentence and we affirm the district court's denial of Demby's motion for a new trial.

Based on the testimony of five co-conspirators and significant documentary evidence, the Government established that Demby was an active participant in a drug trafficking scheme that distributed large amounts of crack cocaine along Route One in the counties of Dumfries and Woodbridge, Virginia. The evidence showed that Demby initially facilitated the drug trafficking scheme from the Scottish Inn, a motel where she worked. Demby registered members of the conspiracy under false names, warned them about making too many phone calls which would draw suspicion to the drug dealing activities, turned off the night alarm so that conspirators could meet with their customers, served as a lookout for police activity in the area, and periodically switched rooms for the conspirators to avoid suspicion. In addition, Demby repeatedly rented cars for co-conspirators to use in acquiring large quantities of crack cocaine from New York and even accompanied the co-conspirators on some of the trips. There was also testimony that Demby was seen directly handling the crack cocaine by carrying it in her purse on several occasions and joining a co-conspirator at a meeting with a supplier. When one of the co-conspirators went on vacation, Demby took over his drug trafficking activities by supplying other conspiracy members with additional crack cocaine for distribution, collecting money from them for their previous sales, and supplying several thousand dollars for a resupply trip to New York City. Finally, there was testimony that Demby drove two co-conspirators around while they distributed drugs, purchased a 1988 Pontiac Bonneville that members used to distribute drugs, and

2

made her apartment available for storage and preparation of crack for distribution. Demby testified at trial, denying that she facilitated drug trafficking and that she knew her boyfriend and his associates were drug traffickers.

I.

Demby challenges several of the district court's evidentiary rulings. First, she alleges that the court erroneously permitted two co-conspirators, Shannon Terrell and Otto Downs, and another lay witness, Rose Dorsey, to identify Demby's handwriting on car rental documents, charge slips, and a bail bond document, all of which were critical in establishing Demby's participation in the conspiracy. Demby also contends that the district court should not have permitted these documents to be admitted into evidence and the Government should have been required to present a handwriting expert.

The trial court's evidentiary decisions are reviewed for an abuse of discretion. See United States v. Hassan El, 5 F.3d 726, 731 (4th Cir. 1993). In the instant case, the district court permitted Terrell to identify Demby's signature based on his testimony that he was familiar with Demby's handwriting because she had written several hotel check-out receipts for him. Downs was permitted to identify a rental car agreement that was signed by Demby because he was present with Demby when the agreement was signed. Similarly, Dorsey testified that she was present when both she and Demby signed the bail bond document.[1] The Advisory Committee Notes to Fed. R. Evid. 901(b) state that a lay witness may identify a handwriting sample if the witness has sufficient familiarity with the writing. Familiarity may be obtained by seeing the defendant write or by other means, so long as the means affords a sufficient basis for identifying the writing on subsequent occasions. See Fed. R. Evid. 901(b) advisory committee's note. Accordingly, because all three witnesses observed Demby in the

_____

[1] The bail bond document proved that Demby assisted in bailing out co-conspirator Downs after he and another co-conspirator were arrested on the New Jersey turnpike with crack cocaine, cocaine powder, and marijuana. The document impeached Demby who testified that she had not known that her boyfriend and his associates were involved in drug trafficking.

3

act of writing, the district court did not abuse its discretion in permitting the co-conspirators or Dorsey to identify the handwriting. Furthermore, because the documents were properly authenticated, the district court did not err in admitting them into evidence.

Demby next contends that evidence of her alleged other crimes and bad acts should not have been admitted into evidence. Specifically, Demby contends that the Government should not have been permitted to present evidence establishing: (1) that Demby used an alias; (2) that co-conspirator Downs was carrying cocaine powder, crack cocaine, and marijuana when he was arrested on the New Jersey turnpike; (3) that Demby had a prior sexual relationship with co-conspirator, Wendell Wickham; (4) that Demby lied when she stated her purse was missing after an attempted robbery at the Scottish Inn and that she lied when she applied for a replacement license; and (5) that Demby facilitated drug trafficking at the Scottish Inn. Each of these claims is meritless.

On direct examination, Demby's attorney raised the issue of whether Demby had ever used an alias, which she denied. Thus, it was proper for the Government to attempt to impeach that statement on cross-examination with evidence of Demby's use of an alias on a W-2 form and phone service records from a trailer used by the conspirators. See Fed. R. Evid. 607, 611(b); Cf. United States v. Ince, 21 F.3d 576, 579 (4th Cir. 1994) (cautioning against prosecution's impeachment of its own witness with prior inconsistent statement).

Evidence of the drugs seized from Downs when he was arrested on the New Jersey turnpike was also properly admitted. Demby rented the vehicle, which was used to acquire drugs from New York. Thus, this evidence established her part in the conspiracy and was properly before the jury. See United States v. Chin, 83 F.3d 83, 88 (4th Cir. 1996) cert. denied, ___ U.S. ___, 64 U.S.L.W. 3485 (U.S. Jan. 16, 1996) (No. 95-6391) (holding that Fed. R. Evid. 404(b) does not require exclusion of evidence regarding acts intrinsic to the crime charged).

Demby's objection to the testimony that she and Wickham had a sexual relationship is also meritless because such evidence is not an example of a prior bad act or other crime within the meaning of Rule

4

404(b). Furthermore, the evidence was relevant to establish Demby's early participation in the conspiracy.[2] See id.

The contention that the Government implied that Demby lied about her missing purse and lied in her application for a replacement driver's license is also meritless. Demby admitted she signed some of the car rental documents. However, she attempted to explain her name on the remaining documents associated with the conspiracy by suggesting someone impersonated her after her driver's license was stolen. To prove that her suggestion was false, the Government offered the testimony of the police officer who investigated a robbery attempt at the Scottish Inn. The officer stated that Demby found her purse at the scene and carried it with her in the ambulance. The Government also elicited testimony from Demby who admitted that when she applied for a replacement license, she listed the old license as lost, not stolen. Both attempts at impeachment by the Government were proper.

Demby's next challenge to the evidentiary rulings is that the Government improperly introduced evidence of Demby's facilitation of drug trafficking activity at the Scottish Inn. Again, this is not evidence of prior bad acts or other crimes as contemplated by the Federal Rules of Evidence; rather, this is direct evidence to establish the charge for which Demby was indicted. Thus, this evidence was properly before the jury. See id.

Finally, Demby contends that the district court should not have admitted the testimony of the co-conspirators because it was uncorroborated, and the court should not have permitted the co-conspirators to testify to statements made in the course of the conspiracy by other co-conspirators. As a general matter, even the uncorroborated testimony of an accomplice may provide a proper basis for conviction. See United States v. Burns, 990 F.2d 1426, 1439 (4th Cir. 1993). Further, in this case, the testimony of the five co-conspirators was corroborated. In addition to the co-conspirators' testimony, the

_____

[2] Wickham explained that the relationship evolved into a sexual relationship, at which time Demby showed Wickham a computer printout of phone calls made from a room rented by one of the conspiracy's customers. Demby showed Wickham the printout to warn him that too many phone calls would draw suspicion.

5

Government presented documentary evidence of Demby's participation via car rental agreements and bail bond documents, police officer corroboration of the New Jersey turnpike incident in which co-conspirators were arrested in a vehicle rented by Demby, and police officer testimony about a local drug bust in which Demby's own vehicle was used. Furthermore, Demby testified that she had lived in a trailer and purchased a vehicle, both of which were implicated in drug trafficking. Demby also admitted working at a motel implicated in drug trafficking and admitted that she knew all five co-conspirators who were also implicated in drug trafficking. Thus, there was sufficient corroboration of the co-conspirators' testimony.

To permit the testimony of co-conspirators concerning statements by other co-conspirators under Fed. R. Evid. 801(d)(2)(E), the court must conclude that a conspiracy existed, which included the declarant and the party against whom the testimony is sought to be admitted, and that the statements at issue were made in the course of and in furtherance of the conspiracy. See United States v. Neal, 78 F.3d 901, 905 (4th Cir.), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3260 (U.S. Oct. 7, 1996) (No. 95-9410). The statements Demby challenges are statements between co-conspirators Wilburn and Terrell. Terrell testified that Wilburn told him to get more crack cocaine from Demby while Wilburn was on vacation. Terrell also testified that Wilburn told him that Demby would turn off the alarms at the Scottish Inn so the conspirators could conduct business with their clients. Both statements clearly fall within the hearsay exception and therefore were properly admitted.

II.

Demby alleges prosecutorial misconduct in that the Government: (1) introduced evidence (as discussed above) of Demby's other crimes and bad acts; (2) said during the opening statement that crack cocaine was highly addictive; (3) referred to co-conspirator Downs as being in "prison" rather than in "jail;" (4) implied that Demby lied about the robbery at the Scottish Inn, lied to the Department of Motor Vehicles when she replaced her driver's license, was a "tax cheat," and used an alias; (5) asked Demby a series of "isn't it true" questions on cross-examination, which were designed to inflame the jury and depict Demby as loathsome and in denial; (6) made misstatements of

6

law and fact in closing argument by stating that Demby knew the co-conspirators and was constantly with them; (7) argued in closing that the defense had "engaged in an effort to convince you [the jury] by confusing you [the jury]" and that Demby's defense regarding the missing purse after the robbery at the Scottish Inn was a false defense; (8) improperly implied that Demby and her counsel planned a crime by stating to the jury that Demby and her attorney got their "signals crossed" during Demby's testimony; and (9) proffered in open court that co-conspirator Daniel Page would testify that Demby kept crack cocaine. All of these claims are meritless.

A claim of prosecutorial misconduct requires a showing of prejudice, and a defendant's due process rights are only violated when the prosecutor's misconduct renders a trial fundamentally unfair. See Darden v. Wainwright, 477 U.S. 168, 181 (1986). The first seven claims are clearly meritless on their face. Claim eight refers to a statement by the Government during the rebuttal argument about a portion of Demby's testimony concerning whether she signed a particular car rental form. Demby initially denied signing the form, but after her attorney refreshed her recollection, Demby admitted signing the document. However, Demby failed to establish that the Government's characterization of the "crossed signals" prejudiced her and, in light of the overwhelming evidence against her, the Government's characterization did not render the trial fundamentally unfair.

Demby's ninth claim of prosecutorial misconduct is also meritless. This claim refers to a proffer by the Government in response to a question by the court. The Government had already called three co-conspirators to testify and had just called a fourth when Demby's attorney objected to the calling of the fourth witness as repetitive and cumulative. The court asked for a proffer of the witness's expected testimony, and the Government stated that the witness would testify to receiving crack from Demby on several occasions. The court ruled that this evidence was cumulative. The Government's next intended witness was Daniel Page. The Government began to proffer what Page's testimony would be. Demby's counsel again objected, so the proffer was completed at the bench. Demby's claim of prosecutorial misconduct is aimed at the incomplete proffer by the Government as to the expected substance of Page's testimony. She contends that the prosecutor's statement constituted misconduct and that the court also

7

erred by not giving a curative instruction at that moment to the jury. However, Demby has failed to establish that this statement by the Government prejudiced her or rendered the trial fundamentally unfair. See Darden, 477 U.S. at 181; Bell v. Evatt, 72 F.3d 421, 436 (4th Cir. 1995), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3837 (U.S. June 17, 1996) (No. 95-8682). Thus, Demby has not established prosecutorial misconduct or the need for a curative instruction.

III.

Demby also challenges the sufficiency of the evidence to support her conviction. She alleges that the non-conspirator testimony is insufficient to convict her and that the testimony of the co-conspirators was incredible and unbelievable. On direct review of this issue, we honor the rule that a jury verdict " must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)), cert. denied, 65 U.S.L.W. 3586 (U.S., Feb. 24, 1997) (No. 96-6868). It is "[t]he jury, not the reviewing court,[that] weighs the credibility of the evidence and resolves any conflicts in the evidence presented." United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994).

Taking the evidence in the light most favorable to the Government, the evidence of Demby's guilt, as described above, which includes the testimony of fifteen witnesses and Demby herself, as well as abundant documentary evidence, is more than adequate to support the verdict.

IV.

Demby contends that the district court erred in determining that she was responsible for 1.5 kilograms or more of crack cocaine. For sentencing purposes, quantities attributable to persons convicted of conspiracy to distribute illegal drugs are determined by examining "the quantity of [drugs] reasonably foreseeable to each coconspirator within the scope of his agreement." United States v. Irvin, 2 F.3d 72, 78 (4th Cir. 1993); see also U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B) ("all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" are taken into account when determining relevant conduct under the

8

guidelines). The government bears the burden of establishing by a preponderance of the evidence the quantity of drugs attributable to a defendant. See United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990). Determinations regarding reasonable foreseeability and quantity of drugs are factual findings reviewed for clear error. See United States v. Banks, 10 F.3d 1044, 1057 (4th Cir. 1993).

The district court did not clearly err in finding that the probation officer's calculation of drug quantities was proper. The presentence report states that the entire conspiracy was responsible for distributing at least ten kilograms of crack cocaine. The probation officer performed two different calculations to determine the amount for which Demby should be held accountable. Based on the testimony by the leader of the conspiracy, Wilburn, about the number of trips to New York in which Demby participated, the probation officer found that Demby should be held responsible for 2.1 kilograms of crack cocaine. This quantity was based on Demby's nine month participation in the conspiracy. Alternatively, based on the testimony of several other witnesses who testified about Demby's participation in trips to New York, the probation officer stated that Demby could be held accountable for the distribution of 1.779 kilograms of crack cocaine. Under the Guidelines, any quantity above 1.5 kilograms of crack warrants a base offense level of 38. Thus, the district court's finding is not clearly erroneous.

Demby also complains that she should have been given an adjustment for a minor role in the offense. "A defendant seeking a downward adjustment for [her] minor role in a criminal offense bears the burden of proving by a preponderance of the evidence that [she] is entitled to such an adjustment." United States v. Nelson, 6 F.3d 1049, 1058 (4th Cir. 1993). Demby failed to carry this burden.

As recounted above, Demby facilitated many aspects of the operation of the conspiracy by arranging for rooms and automobiles, supplying cash, serving as a lookout, taking over the duties of an absent member, and transporting drugs. The evidence of Demby's participation in the conspiracy was substantial and does not indicate that she played merely a minor role in the offense. Therefore, the district court did not err when it refused to give Demby a two-level downward departure under USSG § 3B1.2.

9

V.

Finally, Demby argues that the district court erroneously refused to grant her motion for a new trial based on newly discovered evidence. The newly discovered evidence consisted of Demby's unsupported statement that she met an inmate while incarcerated who allegedly told Demby and other inmates that she had rented vehicles in Demby's name and forged her signature, that Demby was not a participant in the conspiracy and did not knowingly participate in any of the New York trips to acquire crack cocaine, that Demby was serving the witness's jail time, and that the witness used the alias of Bonita Demby. The district court concluded that this information did not constitute newly discovered evidence because the defense was previously aware of the witness's identity and the information was cumulative in that it corroborated some of the statements Demby made at trial. Furthermore, the district court found that based on the overwhelming amount of evidence establishing Demby's participation in the conspiracy, no new trial was warranted.

A new trial may be granted on the basis of newly discovered evidence if the movant has through due diligence discovered evidence that is, in fact, newly discovered, not merely cumulative or impeaching, material, and of the type which would probably result in an acquittal at a new trial. See United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989). This court reviews a denial of a motion for new trial for an abuse of discretion. See United States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995). In the instant case, assuming Demby could produce the evidence she alleges is newly discovered, the additional information would not result in an acquittal at a new trial. In addition to the evidence of the car rental agreements, some of which Demby admitted signing, the Government also established that Demby personally handled the crack cocaine, stored it in her apartment, and disbursed it to fellow co-conspirators when Wilburn was on vacation. The Government also established that Demby traveled to New York during several of the resupply runs. Thus, in light of the overwhelming evidence of Demby's guilt, the district court did not abuse its discretion in denying Demby's motion for a new trial.

Accordingly, because all of Demby's claims are meritless, we affirm her conviction and sentence and affirm the district court's deci-

10

sion not to grant her a new trial. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

11