**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 98-4027

PABLO GONZALEZ ARIAS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 98-4028

ANGEL D. BELASQUEZ,
Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of West Virginia, at Huntington.
Joseph Robert Goodwin, District Judge.
(CR-97-94)

Argued: March 1, 1999

Decided: April 9, 1999

Before WIDENER and LUTTIG, Circuit Judges, and
VOORHEES, United States District Judge for the
Western District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Edward Henry Weis, First Assistant Federal Public Defender, Charleston, West Virginia, for Appellant Belasquez; Debra C. Price, Charleston, West Virginia, for Appellant Arias. Miller Allison Bushong, III, Assistant United States Attorney, Charleston, West Virginia, for Appellee. **ON BRIEF:** Hunt L. Charach, Federal Public Defender, Charleston, West Virginia, for Appellant Belasquez. Rebecca A. Betts, United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Angel Belasquez and Pablo Arias appeal their jury convictions and sentences for conspiring to distribute and to possess with the intent to distribute cocaine from February 1997 until June 22, 1997, in violation of 21 U.S.C. § 846; for distributing cocaine on June 22, 1997, in violation of 21 U.S.C. § 841(a)(1); and for possessing with the intent to distribute cocaine on June 22, 1997, in violation of 21 U.S.C. § 841. We affirm.

I.

Police arrested appellants Belasquez and Arias on June 22, 1997, in Huntington, West Virginia, after a staged cocaine purchase from them by Michael Moore, an informant whom police had wired for monitoring and tape recording. As Moore was leaving the motel room where the purchase occurred, the police made a warrantless entry, arrested appellants, and seized six ounces of cocaine. The district court suppressed this cocaine, however, after rejecting the police officers' claim that exigent circumstances justified their failure to secure

2

a warrant. In particular, the district court found the testimony of Moore and of Lieutenant Wallace Adkins at the suppression hearing to be "plainly inconsistent" with their prior testimony before the grand jury that had indicted appellants. Notwithstanding the suppression, the government proceeded to trial, relying chiefly upon the testimony of Moore and of Woody Adkins and Dale Lyons. Lyons and Woody Adkins had been indicted with appellants, pleaded guilty, and were cooperating with the government. On October 1, 1997, a jury found appellants guilty on the three charges mentioned above.

II.

Appellants collectively advance five claims of error on appeal. For the reasons that follow, we find no reversible error as to any of the five.

First, they both argue that the district court, by denying their motion in limine to allow them to impeach Moore and Lieutenant Adkins without opening the door to the suppressed evidence, improperly limited their ability to cross-examine those government witnesses. Because the district court never definitively ruled on the motion in limine and the issue did not arise at trial, we conclude that no error was committed by the district court.

A motion in limine may preserve an objection for appeal without any need to renew the objection at trial, but only if the trial court clearly and definitively rules on the motion. See United States v. Williams, 81 F.3d 1321, 1325 (4th Cir. 1996); United States v. Mejia-Alarcon, 995 F.2d 982, 986-88 (10th Cir. 1993). If the court does not do so, and the party that brought the motion in limine does not at trial either object to a ruling by the court or at least renew his request for a ruling, he waives for appeal the issue in the motion. Williams, 81 F.3d at 1326; United States v. Valenti , 60 F.3d 941, 944-45 (2d Cir. 1995). Applying the rule of Williams and Mejia-Alarcon, the record is clear that the district court did not unequivocally rule on the motion in limine and thus that that motion did not preserve appellants' argument for appeal.

Appellants wished to impeach the expected testimony of Moore and Lieutenant Adkins concerning the events of June 22 with the

3

inconsistency between their prior testimony before the grand jury and in the suppression hearing. But appellants did not want such impeachment to open the door for the government to introduce either the suppressed cocaine seized that day or the fact of its seizure. Therefore, at a conference the morning of trial, the appellants made an oral motion in limine to allow them to cross-examine these two witnesses regarding their prior testimony, free of the risk of opening the door to admission of the incriminating evidence.

The district court initially did seem inclined to deny the motion, but by the end of the conference rather clearly decided to defer its decision until trial. The court first explained that"the Government might well be given the opportunity to respond," and that that response "may well get into the areas that have previously been suppressed and would become invited by the defendant." It added as follows:

> So I'm not to going to rule that you can't go into those areas, but if you do, I'll -- well, let me just tell you. There's no point in beating around the bush about it. If you do, I think you're opening it up to the Government.

J.A. at 108. Counsel for Belasquez, Mr. Weis, however, successfully pressed the matter further, leading the court to observe that "perhaps it's better for [the court] to rule on this at trial," and then to conclude by reserving the question as follows:

> I'll be frank to tell you that I'm a little bit concerned about the issue that Mr. Weis raises with regard to impeaching [Moore].
>
> I think I said -- at least I meant to say, that you may raise it and I'm not precluding you from attempting to impeach any witness with anything you want. What I will rule thereafter is an entirely separate matter.

J.A. at 112. Thus, the court did not clearly rule on the motion in limine; on the contrary, it fairly clearly postponed any ruling until trial. The motion in limine, therefore, did not preserve appellants' argument for this appeal.

4

As a result, and because there was at trial no objection or ruling on a renewed motion, we would at most review only for plain error. United States v. Ellis, 121 F.3d 908, 918 (4th Cir. 1997). But since this issue did not arise at all at trial, there is simply no ruling for us to review, not even for plain error. Lieutenant Adkins did not testify. Moore did, but counsel for appellants neither cross-examined him about his prior testimony nor requested any ruling during trial as to what the consequence of such a cross-examination would be.

At oral argument, appellants appeared to retreat to an alternative contention regarding their ability to impeach Moore. Rather than claiming that the trial court had actually ruled on and denied their motion in limine, they argued that the court's refusal to rule amounted to a decision effectively precluding them from impeaching Moore with his prior testimony; deprived of assurance from the court, they contended, they avoided such impeachment at trial for fear of opening the door to the suppressed evidence. However, "[i]t is well established that the court need not rule on a motion in limine." United States v. Luce, 713 F.2d 1236, 1239-40 (6th Cir. 1983), aff'd, 469 U.S. 38 (1984). At trial, appellants simply should have renewed their request for a definite ruling. See Valenti, 60 F.3d at 945. The court's refusal to rule pre-trial was not error.

Even if, as appellants chiefly contend in their brief, the trial court's statements regarding the motion in limine did amount to a ruling, and an erroneous one, precluding them from fully impeaching Moore (for fear of opening the door to the suppressed cocaine), this alleged abridgement of appellants' rights under the Sixth Amendment's Confrontation Clause was harmless error. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (holding that violation of right under Confrontation Clause to impeach witness's credibility is subject to harmless-error analysis); Sherman v. Smith, 89 F.3d 1134, 1137 (4th Cir. 1996) (en banc) (listing the numerous constitutional errors subject to harmless-error analysis, including violation of Confrontation Clause and admission of illegally seized evidence).

Appellants were able to impeach Moore's credibility even without using his prior inconsistent testimony, and his testimony at trial was fully corroborated. First, on cross-examination appellants brought out that Moore had used and dealt in drugs, had pleaded guilty to drug

5

charges and been imprisoned, and was on probation; Moore also admitted that he had cooperated with the government and was testifying in order to benefit himself, and that, on at least one occasion, he had lied to Arias. Second, Moore's testimony as to the June 22, 1997, drug buy in the motel room was supported by the tape recording of the deal, which was admitted into evidence. Moore's testimony about his drug dealings with appellants in Florida in 1997 was corroborated by the testimony of both Lyons and Woody Adkins. Lyons testified about purchasing four ounces of cocaine from Arias in March of 1997, about meeting Belasquez during that trip and learning that Belasquez and Arias knew each other, and about an April 1997 conversation between Dan Coltrane (a co-conspirator) and Belasquez regarding Belasquez's efforts to purchase cocaine for Lyons and Adkins. Adkins, too, testified about the March cocaine purchase, placed Belasquez with Arias at the time of and immediately after that purchase, and said that Belasquez and Arias knew each other. Adkins, like Lyons, also testified about the April conversation between Coltrane and Belasquez. He added that after that conversation Belasquez tried without success to obtain cocaine for them, but that Arias was able to supply six ounces of cocaine a few days later. In light of all of this evidence, we can "confidently say" that even if the court had improperly limited the right to impeach Moore, that error "[would have been] harmless beyond a reasonable doubt." Van Arsdall, 475 U.S. at 681.

As the second claim of reversible error, Belasquez contends that the district court erred by admitting the testimony of Lyons and Woody Adkins about Coltrane's conversation with Belasquez in April 1997. Coltrane, according their testimony, related to them in English what Belasquez had told him during a conversation in Spanish, a conversation that Lyons and Adkins both overheard. Coltrane said that Belasquez had told him that he (Belasquez) was going to make some phone calls to try to find some cocaine for Lyons and Adkins. Adkins testified that after the discussion Belasquez did indeed go to the telephone and make some calls. Belasquez was not successful in getting the cocaine, however. Appellants argue that the court erred because it should not have admitted this testimony without first finding that Coltrane's statements to Lyons and Adkins were reliable (by finding that Coltrane was fluent in Spanish), and that the finding of fluency that the court did make was insufficient.

6

We review for abuse of discretion a district court's decision to admit, under Fed. R. Evid. 801(d)(2)(E), testimony about statements by a defendant's co-conspirator made in furtherance of the conspiracy. United States v. Neal, 78 F.3d 901, 905 (4th Cir. 1996). Appellants argue, however, that it is a question of law, reviewable de novo, whether a court must make a finding of reliability when the co-conspirator's statement is a translation. Under either standard of review, however, there was no reversible error. First, Coltrane did make his statements (the translation) to Lyons and Woody Adkins in furtherance of his conspiracy with Belasquez to sell cocaine to them, thus satisfying Rule 801's terms, and no additional finding of the translation's reliability was necessary for its admission. United States v. Aboumoussallem, 726 F.2d 906, 910 (2d Cir. 1984). Cf. Bourjaily v. United States, 483 U.S. 171, 183-84 (1987) (holding that Constitution "does not require a court to embark on an independent inquiry into the reliability of statements that satisfy the requirements of Rule 801(d)(2)(E)"). Rather, the reliability of Coltrane's report of what Belasquez said "is to be assessed by the jury on the basis of all the circumstances under which the report is made." Aboumoussallem, 726 F.2d at 910.* Second, even if we were to require some evidence of reliability beyond that which Rule 801 requires, Belasquez's actions, which were consistent with Coltrane's translation, provide it, see id., and we agree with the district court that the testimony of witnesses who had observed Coltrane conversing readily with Belasquez in Spanish was sufficient evidence that Coltrane was fluent in that language.

Next, and as the third claim of error, Belasquez asserts that the district court abused its discretion by denying his motion for a mistrial

_____

*Contrary to appellants' suggestion, the question of whether a court must make a finding of the translation's reliability is separate from the question of what evidence suffices to satisfy Rule 801(d)(2)(E)'s requirements that there be a conspiracy between the declarant and the defendant, and that the declarant make his statement in furtherance of that conspiracy. On the latter question, see Bourjaily, 483 U.S. at 175; United States v. Clark, 18 F.3d 1337, 1341-42 (6th Cir. 1994); Neal, 78 F.3d at 905. Indeed, Bourjaily itself highlighted this distinction, as the quotation above indicates. Appellants do not claim that there was insufficient evidence to meet the explicit requirements of Rule 801.

7

after Woody Adkins, in response to a question from counsel for co-defendant Arias, said that he had been in jail with appellants. Belasquez argues that this statement "impaired" his right to a presumption of innocence. But the district court immediately instructed the jury to ignore the question and answer. The jury is presumed to be able to follow the judge's instruction, and we see no reasonable probability that Adkins' statement affected the jury's verdict regarding Belasquez. See United States v. Jones, 907 F.2d 456, 460 (4th Cir. 1990). We thus find no abuse of discretion.

Fourth, appellants both charge that the district court abused its discretion by allowing the government, during its closing argument, to comment on their failure to testify, thus compromising their right against self-incrimination. The government stated as follows:

> [L]et me say this about the witnesses that we put on the stand and a word about the one, [Phil Dunfee], we didn't put on the stand. . . . [I]n assessing the truth of what a witness says, you can gather information from what they don't [sic] say. If these guys are unfettered by the bounds of truth and can say anything, what kind of stories could they have told?

J.A. at 363. The district court immediately confirmed that "these guys" referred to the witnesses called by the government and therefore overruled appellants' objection. The government then continued: "They could have made up all kinds of stories, but they tried to tell the truth as best they could about the involvement of these two individuals." J.A. at 363-64. We agree with the district court that "these guys," taken in context, in no way referred to appellants, much less to their failure to testify. Nor could the jury reasonably have so taken the phrase. See United States v. Francis , 82 F.3d 77, 78 (4th Cir. 1996). There was no abuse of discretion.

Finally, Arias asserts that the district court clearly erred by enhancing his offense level by two points for being an organizer, leader, manager, or supervisor in the criminal activity pursuant to U.S.S.G. § 3B1.1(c) (1997). The district court adopted the findings of the presentence report, which concluded that Arias directed the actions of Belasquez. The evidence was that, on June 22 at the motel room, Belasquez opened the door for Moore but Arias then took over, han-

8

dling all conversations with Moore, handing over the cocaine to him, and accepting the money from him. There was also evidence that Arias directed Belasquez's actions during some of the events in Florida. Thus, the district court's finding that Arias was a leader or organizer of the drug activity was not clearly erroneous.

III.

Finding no reversible error on any of appellants' five arguments, we affirm their convictions and sentences.

AFFIRMED

9