**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 98-4671

WAYNE E. JACKSON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                         No. 98-4686
DANIEL L. SPENCE, a/k/a Daniel L.
Johnson,
Defendant-Appellant.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CR-98-34-S)

Argued: May 7, 1999

Decided: July 6, 1999

Before WILLIAMS, MICHAEL, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Elizabeth Linn Pearl, Assistant Federal Public Defender, James Wyda, Federal Public Defender, Baltimore, Maryland, for Appellant Jackson; John Augustine Bourgeois, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Appellant Spence. Thomas Michael DiBiagio, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** James P. Ulwick, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Appellant Spence. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In May 1998 Wayne Jackson and Daniel Spence were convicted in the District of Maryland for attempted bank robbery, certain firearms violations, victim tampering, and arson. They appeal on several grounds, and we affirm.

I.

Around 8:00 p.m. on December 11, 1997, Peter and Stacy Gianiodis returned to their home in Howard County, Maryland. When they entered the house, they were confronted by two armed men. One of the men wore a dark leather jacket. The other wore a sweater and had a waist pouch that said "Newport Pleasure" on it. Both men wore ski masks, although at various times each of the men rolled the masks up above their eyes. The intruders handcuffed and tied the Gianiodises with duct tape. Then, the man in the sweater (who turned out to be Spence) began asking questions about the vault at the bank where Peter Gianiodis worked. After questioning Peter Gianiodis, the man

2

in the sweater took Stacy Gianiodis upstairs. He told her he had "cut up his arm real bad" while crawling through the basement window. He then sexually assaulted her. Several hours later, the men took the Gianiodises' ATM cards and PIN numbers. Thereafter, the men left the house, and after a brief time at least one of the men returned, retied the victims, and set a gasoline fire in the basement. The arsonist (or arsonists) left when the fire alarm sounded. The Gianiodises were able to escape.

In the early morning hours of December 12, 1997, there were three ATM transactions in the Gianiodises' account. Jackson's fingerprint was found on the receipt from one of the transactions. Jackson and Spence were also captured on the surveillance video of one transaction. The following morning, Spence called an old girlfriend and told her he had entered the home of a Howard County couple in order to get the combination to a bank vault.

In a search of Spence's house, police found a waist pouch with "Newport Pleasure" written on it. A search of Jackson's house turned up a black leather jacket. A 15-year-old boy testified that on December 12, 1997, he had rented a car from Jackson for 30 dollars. The car belonged to the Gianiodises. Finally, a police evidence technician testified that he saw a number of cuts on Spence's arm several weeks after the crime.

Based on this evidence, Wayne Jackson and Daniel Spence were convicted of attempted bank robbery in violation of 18 U.S.C. § 2113(a) and (f) (1994), two counts of using and carrying a firearm in violation of 18 U.S.C. § 924(c) (1994), conspiracy in violation of 18 U.S.C. § 371 (1994), victim tampering in violation of 18 U.S.C. § 1512 (1994), and arson in violation of 18 U.S.C. § 844(h) (1994). Spence was sentenced to 59 years and 5 months imprisonment. Jackson was sentenced to life plus 35 years.

Jackson and Spence appeal on several grounds. They contend that the district court erred by denying Jackson a <u>Franks</u> hearing, by denying their motions to sever, by allowing testimony about Stacy Gianiodis's sexual assault, by refusing to give several of their requested jury instructions, by denying their motions for acquittal, by allowing

3

conviction on two firearms counts, by sentencing Spence as a career offender, and by holding the federal three-strikes law constitutional.

II.

Jackson argues that the district court should have suppressed the fruits of the search of his house. Specifically, he argues that the district court erred in denying him a hearing under Franks v. Delaware, 438 U.S. 154 (1978). In Franks the Supreme Court determined that a defendant may challenge a facially sufficient warrant affidavit, and must receive a hearing, if he can make a "substantial preliminary showing" that the affiant acted with reckless disregard for the truth and that, had truthful information been given, probable cause could not have been sustained. See id. at 171-72. As this court has previously said, "[t]he Franks test also applies when affiants omit material facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990) (internal quotation marks omitted).

Here, Jackson contests the validity of the affidavit used to support the warrant issued for the search of his house, contending that the affiant omitted important information when he applied to a state judge for the warrant. The district court denied the motion for a hearing, holding that "there was sufficient probable cause. . . and there would have been, even had the matters that [Jackson] claims were wrongfully omitted been included in the affidavit."

The district court was correct. When the prosecution sought the warrant against Jackson, it relied on two statements that suggested his involvement in the crime: (1) the statement of a 15-year old boy detailing how Jackson had rented him a car, a car that belonged to the Gianiodises, and (2) the identification by Jackson's wife of her husband in an ATM surveillance video taken when the victims' card was used.

Still, Jackson argues that the affiant omitted several important facts that would have shown the unreliability of the proffered information. First, Jackson claims that the affiant should have told the court that the 15-year old gave his statement in the presence of a man who, at the time, was a suspect in the case. Second, Jackson claims that the

4

affiant should have fully disclosed Mrs. Jackson's identity. According to Jackson, that would have revealed that she worked for the Maryland Department of Corrections and that she violated Department regulations by marrying Jackson (a former inmate under her supervision) without notifying the Department. Had the state court known these facts, Jackson argues, probable cause for the warrant would have been defeated.

We disagree. We cannot say that the affiant's omission of this information showed a reckless disregard for the truth. In addition, probable cause simply requires that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The prosecution met this standard by presenting evidence of Mrs. Jackson's identification of her husband in an ATM surveillance video and by noting the statement of the 15-year old who rented the Gianiodises' car from Jackson. The affiant's failure to mention the additional information Jackson discusses did not make the affidavit misleading; nor would that information have defeated probable cause.[1] The district court therefore did not err in denying Jackson's request for a Franks hearing.

III.

Jackson and Spence next argue that the district court abused its discretion when it denied their motions to sever. Rule 14 of the Federal Rules of Criminal Procedure provides that a "court may . . . grant a severance" when "it appears that a defendant .. . is prejudiced by a joinder." Fed. R. Crim. P. 14.

The Supreme Court has elaborated on the level of prejudice neces-

---

[1] Jackson also argues that the affiant neglected to mention that Spence resembled Jackson in the ATM photo and that there was a discrepancy between the victims' descriptions of Jackson (more than 6 feet tall and age 25-35) and Jackson's actual appearance (5'10" and early 40s). This argument was not raised below, but in light of the information that was provided by the affiant, the addition of this particular information about resemblances, descriptions, and actual appearance would not have been sufficiently material to defeat probable cause.

sary for severance. Severance is required when there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States , 506 U.S. 534, 539 (1993). This is not an easy threshold for a defendant to meet. We have noted that "a certain amount of conflict among defendants is inherent in most multi-defendant trials," United States v. Smith, 44 F.3d 1259, 1267 (4th Cir. 1995), and that a defendant must show that "the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty," United States v. Spitler, 800 F.2d 1267, 1273 (4th Cir. 1986) (internal quotation marks omitted). The defendants have not made such a showing here.

Jackson argues that he was entitled to a severance because he and Spence presented inconsistent defenses. Spence presented an alibi defense. He testified that he had spent part of the evening visiting with his sister and nephew and talking to a friend. He said that he went downtown late in the evening with Jackson, his neighbor. According to Spence, Jackson was present when two men approached and asked Spence to withdraw cash from ATM machines using the Gianiodises' bank cards. Jackson, who did not take the stand, argues that Spence's testimony was incompatible with his (Jackson's) defense: Jackson's counsel attempted to suggest that Jackson was nowhere near the scene of the crime that night.

Jackson's argument fails. Spence testified only that Jackson had been present downtown at the ATM machines; the testimony did not place Jackson at the Gianiodises' house. Spence's story therefore did not implicate Jackson in the crimes charged, even if the jury believed what Spence said about him. Moreover, the district court emphasized to the jury that, for it to convict, each defendant had to have been present at the place where the offenses occurred, that is, the house. Thus, we conclude that Jackson has failed to establish that a jury would "unjustifiably infer" from Spence's testimony that Jackson was guilty. See id.

Spence mainly objects to the cautionary instruction the judge gave to avoid any prejudice to Jackson from Spence's defense. The judge told the jury: "you could not, if you should disbelieve Mr. Spence's defense, simply on that basis, convict Mr. Jackson, because Mr. Jack-

6

son must be found guilty or not guilty based on the evidence pertaining to him, not simply on whether or not you put credence in Mr. Spence's defense." Similarly, Jackson's attorney told the jury, "You heard Mr. [Spence's] story, and I think you know that that is not our evidence. That is not what I am asking you to consider regarding Wayne Jackson. Please separate the two." Spence also objects to these statements because he believes they cast doubt on his credibility and prejudiced his opportunity for a fair trial. The cautionary instruction and the comment by Jackson's attorney are fairly unremarkable in the context of the entire trial. We do not believe they caused the jury to decide that Spence was guilty.

The district court did not abuse its discretion when it refused to grant the defendants' motions for severance.

IV.

Spence next argues that the district court erred in allowing Stacy Gianiodis to testify about her sexual assault. Spence argues that the testimony should have been excluded under Rule 403 of the Federal Rules of Evidence because the "probative value[of the evidence was] substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. The district court acknowledged that testimony about the assault would be inflammatory but allowed it because it was related to "an entire course of conduct" and was admissible under Fed. R. Evid. 404(b). The court also supported its ruling by noting the relevance of the sexual assault to the victim tampering charge.

In light of the broad deference we afford to trial courts on issues of admissibility, see United States v. Love, 134 F.3d 595, 603 (4th Cir.), cert. denied sub nom. Sheppard v. United States, 118 S. Ct. 2332 (1998), we conclude that the district court did not abuse its discretion in allowing this testimony. First, the sexual assault was relevant to identification because it was one of the only times Mrs. Gianiodis saw Jackson and Spence without their masks. Second, as the district court recognized, the sexual assault was relevant to the victim tampering charge.

Finally, there was other strong evidence against Spence. His "Newport Pleasure" waist pouch was found at his house; he admitted to his

7

old girlfriend that he had been at the scene; Mrs. Gianiodis identified him; and he appears in a surveillance photo taken at one of the ATM machines.

V.

Jackson and Spence next argue that the district court erred by refusing to give several requested instructions. First, Jackson argues that the court should have given a "missing witness" instruction. Jackson wanted Warren Lamont Jackson, a man who was once a suspect in this case, to testify. A missing witness instruction is available when a party can show (1) that it is particularly within the power of the opposing party to produce the witness and (2) that the witness's testimony "would elucidate the transaction[s]" in issue at trial. See United States v. Brooks, 928 F.2d 1403, 1412 (4th Cir. 1991). Jackson has not established either element of this test. His argument that Warren Lamont Jackson could have contradicted the 15-year-old boy's testimony about the car rental is purely speculative. In addition, it is not clear that the government had any more ability than defendant Jackson to produce Warren Jackson to testify. It was not error to refuse the missing witness instruction.

Both defendants claim that the district court erred in failing to grant their request for a theory of defense instruction. This point is without merit because the court delivered the substance of the requested instruction. Their argument that the court should have defined reasonable doubt is likewise without merit. Under the law in this Circuit, no such instruction is authorized "absent a specific request for . . . a definition from the jury." United States v. Oriakhi, 57 F.3d 1290, 1300 (4th Cir. 1995). The jury did not ask that reasonable doubt be defined.

Finally, Jackson contends that the judge should have delivered a stronger instruction about identification. The district court instructed the jury to consider whether "the witness [had] the ability to see the offender at the time of the offense." Jackson argues that the judge should have advised the jury to "scrutinize the identification with great care" and to consider "how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past." United States v. Holley, 502 F.2d 273, 277 (4th Cir. 1974).

8

Holley, the case relied on by Jackson, is distinguishable. It requires a stronger identification instruction "in the context of a case that contains no evidence of identification except eyewitness testimony." 502 F.2d at 275. Here, unlike in Holley, there is ATM surveillance film that shows Jackson, shortly after the events at the Gianiodis home, wearing the leather jacket that Mrs. Gianiodis described; there is evidence that Jackson rented the Gianiodises' car to someone on the morning following the crime; and, in a search of Jackson's home, police found a leather jacket resembling the one described by Mrs. Gianiodis. Because there was independent (non-eyewitness) identification evidence, the Holley instruction was not required.

VI.

Jackson asserts that the district court erred in denying his motion for acquittal because the evidence was insufficient to link him to the crimes. The following standard governs our sufficiency analysis: "[t]he verdict of [the] jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942).

There was sufficient evidence to allow a reasonable juror to convict Jackson. First, Jackson was captured on surveillance footage using the victims' ATM cards shortly after the crime. Second, the photo reveals that Jackson was wearing a rolled up ski mask and jacket fitting the description given by Mrs. Gianiodis. Third, Jackson rented Mrs. Gianiodis's car to a young boy the day after the crimes. Fourth, a leather jacket was found in Jackson's home several days after the crime. And finally, Mrs. Gianiodis identified Jackson in court as one of the two perpetrators. Given this range of evidence, we believe the district court correctly denied Jackson's motion for acquittal.

VII.

Spence argues that the district court erred by refusing to grant his motion for acquittal, claiming that there was insufficient evidence to support his conviction for victim tampering (here, attempted murder by arson).[2] We disagree. In order to prove Spence guilty of victim

_____

[2] In addition, Spence argues that, should we reverse his victim tampering conviction, we should also reverse his convictions on the related charges of arson and use of a firearm in connection with victim tampering. See App. brf. at 49.

9

tampering in this case, the government was required to show (1) that Spence attempted to kill the Gianiodises and (2) that he attempted to kill the Gianiodises to prevent their communication with federal law enforcement authorities about his possible violations of federal law. See 18 U.S.C. § 1512 (1994). To prove attempted murder, in turn, the government had to show that Spence intended to kill the Gianiodises and that he took a substantial step toward doing so. See United States v. Neal, 78 F.3d 901, 906 (4th Cir. 1996) (discussing the definition of attempt generally).

The government met both prongs of the test for attempted murder. First, Mrs. Gianiodis testified that she heard her fire alarms activate before either perpetrator left the house. That testimony alone would have allowed a reasonable juror to conclude that Spence had the requisite intent and took a substantial step necessary to constitute attempted murder. Second, even if we assume that one man left before the fire started, there was still sufficient evidence to convict Spence. Indeed, evidence of intent is plentiful. For example, Spence told Mrs. Gianiodis that he and his companion would kill her if she contacted the police. Spence also told Mrs. Gianiodis that they would kill her if they had to kill her husband. Moreover, Mrs. Gianiodis testified that Spence (the man in the sweater) returned to her bedroom shortly before the fire was set, retied her, stuffed a sock in her mouth, and turned up the radio. Those actions were essential to the success of any scheme to burn the victims alive, and they constitute the substantial step necessary to sustain the victim tampering conviction. For these reasons, we decline to set aside Spence's conviction for victim tampering.

VIII.

Jackson and Spence also challenge their firearms convictions on several grounds. They argue that the district court erred by allowing the government to prosecute each of them on two separate 924(c) counts, one in connection with the attempted bank robbery count and one in connection with the victim tampering count.

We have previously allowed prosecution and sentencing for multiple uses of a firearm during one criminal episode. See United States v. Camps, 32 F.3d 102, 106 (4th Cir. 1994). The defendants ask this

10

panel to reject Camps, something we cannot do. See United States v. Guglielmi, 819 F.2d 451, 457 (4th Cir. 1987) (noting that only an en banc court may overturn a previous panel's published decision).

The defendants also argue that there is no evidence that they used or carried firearms in connection with the victim tampering charge. The defendants were armed throughout the evening and used the guns to subjugate their victims. This alone, as the district court noted, might suffice to "satisfy the offence." But, as the district court also noted, it was reasonable to infer that the defendants were carrying the guns at the time of the arson. Mrs. Gianiodis testified that the man who retied her prior to the activation of the fire alarm was armed. In fact, Mrs. Gianiodis testified that the men were always armed. From this evidence, a reasonable jury could have concluded that Spence and Jackson executed the arson while armed.

IX.

Spence argues that the district court erred by sentencing him as a career offender. Specifically, Spence objects to the court's treatment of one of his prior convictions as a crime of violence for sentencing purposes. On this issue, we review the district court's determination de novo. See United States v. Kirksey , 138 F.3d 120, 122 (4th Cir.), cert. denied, 119 S. Ct. 122 (1998).

To sentence a defendant as a career offender, a district court must find that the defendant has had "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. The Sentencing Guidelines define a "crime of violence" as "any offense . . . punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2.

Sometimes it is relatively easy to determine whether a prior conviction constitutes a crime of violence. Homicide, for instance, necessarily involves "the use of physical force against the person of another." Sometimes, however, it will not be clear from the conviction itself whether the underlying conduct would render it a crime of violence. In such circumstances, we have held that a district court may look to

11

the charging papers to aid in its determination. See Kirksey, 138 F.3d at 124-25. In this case, one of Spence's prior convictions was for common law battery. Because common law battery "embraces a wide range of conduct," see id., the district court looked to the charging papers underlying the conviction. Those papers revealed that the charges had been brought because Spence had hit his girlfriend in the mouth and his baby in the head. Spence pled guilty to those charges. Given these circumstances, it is proper to count Spence's common law battery conviction as a crime of violence.

X.

Finally, Jackson argues that the federal three-strikes law, 18 U.S.C. § 3559(c)(1) (1994), under which he received a life sentence, violates his substantive and procedural due process rights. He cites no cases on point, and we reject his argument.

XI.

The convictions and sentences of Wayne Jackson and Daniel Spence are affirmed.

AFFIRMED

12