**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                    No. 99-4615

KENNETH R. HENSLEY,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
James P. Jones, District Judge.
(CR-98-48)

Submitted: February 29, 2000

Decided: March 30, 2000

Before WILLIAMS and TRAXLER, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

David L. Scyphers, SCYPHERS & AUSTIN, P.C., Abingdon, Vir-
ginia, for Appellant. Robert P. Crouch, Jr., United States Attorney,
Rick A. Mountcastle, Assistant United States Attorney, Abingdon,
Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Kenneth R. Hensley of being a felon in possession of firearms and ammunition in violation of 18 U.S.C.A. §§ 922(g), 924(a)(2), 924(c) (West Supp. 1999) (count 1), conspiring with William G. Roark to knowingly make materially false statements to the Bureau of Alcohol, Tobacco, and Firearms ("BATF") in violation of 18 U.S.C.A. § 371 (West 1966 & Supp. 1999) (count 2), and knowingly making a false material statement to the BATF in violation of 18 U.S.C.A. § 1001 (West Supp. 1999) (count 3). The court sentenced Hensley to a seventy-month prison term on count 1 and concurrent sixty-months terms of imprisonment on counts 2 and 3, to be followed by a total three years of supervised release.

On appeal, Hensley challenges his convictions and sentences for conspiracy and making a false statement (counts 2 and 3), on the grounds that the admission of a nontestifying codefendant's statements violated his Sixth Amendment right to confront the witnesses against him, that the district court erred in admitting a summary of events prepared by the government, and that the evidence was insufficient to support his convictions. Hensley does not challenge his conviction and seventy-month sentence for being a felon in possession of firearms and ammunition. We affirm in part, vacate in part, and remand.

I.

Taking the evidence in the light most favorable to the government, see Glasser v. United States, 315 U.S. 60, 80 (1942), testimony at trial disclosed that on November 8, 1997, officers of the Bristol, Virginia, police department arrested Hensley for a traffic violation. Before impounding Hensley's truck, officers searched it and discovered a loaded 9mm gun under some clothes in a cardboard box behind the

2

driver's seat. Because the gun was not stolen, officers unloaded the gun and left it in the truck. When officers later released Hensley, he picked up his truck with the gun and ammunition in it.

Because Hensley had been convicted of several felonies, the Bristol police officers contacted BATF agents. Agent Hall testified that he executed a search warrant for Hensley's home on November 12, 1997. During the search, Hensley took the BATF agents to his desk where he had the loaded 9mm gun in the manufacturer's box with an extra clip and two boxes of ammunition. Hensley told BATF agents that he did not know the 9mm gun was in his truck but that when he picked the truck up after his release, he found the gun, took it home, carried it and the ammunition inside, and reloaded the gun. Hall also testified that on November 25, 1997, Hensley admitted for the second time carrying the 9mm gun and ammunition from his truck to his home. Hall testified that Hensley told BATF agents that the gun belonged to Roark, who must have left it in the truck after he borrowed the truck.

On December 3, Agent Hall and an investigator from the Virginia Department of Motor Vehicles ("Bralley") interviewed Roark. Bralley and Hall each testified that Roark told them that he owned the gun and ammunition, that he bought the gun at a flea market, that the gun had a shiny finish, that he forgot to retrieve the gun and ammunition after borrowing Hensley's truck, and that Hensley called him to see if he had left the gun in the truck. Hall indicated to Roark that Roark's story was not true, and Hall left the interview room to retrieve the pistol taken from Hensley. Hall testified that he showed Roark the gun seized during the search of Hensley's home and that Roark denied that it was his, stating that the gun he owned was shinier than the one Hall showed him during the interview. Both Bralley and Hall testified that Roark then changed his story and told the officers Hensley had gotten him to lie in order to provide Hensley with an alibi for the gun. When asked why he first stated that the gun was his, Roark told the agents that he had met with Hensley at Hensley's attorney's office in mid-November, where Hensley described the gun and details about its discovery. Hall quoted Roark to the jury as follows:

> Hensley told him the gun was found--when they found it it was loaded, the clip was loaded, the pistol had a silver fin-

3

ish, told him what kind it was, and provided a copy of the search warrant to Mr. Hensley which had a description of the pistol in the search warrant, said that the, to say that the pistol was in the original manufacturer's box, and that it had been placed in a box with some clothes in it behind the driver's seat in the extend cab portion of the truck.

And Mr. Roark also stated that he asked Mr. Hensley where he had gotten the pistol at, and Mr. Hensley said he bought it about two years ago from a subject at the flea market, the Banner Star Flea Market in Abingdon.

J.A. 137.

Hall testified that before Roark appeared before the grand jury on December 11, Roark told him (as he first said in the December 3 interview) that he would tell the grand jury the gun and ammunition belonged to him. Hall testified that Roark told him that he had talked to Hensley on December 5 but would not disclose what they discussed. Roark did not testify at trial.

On these facts, the jury convicted Hensley on all counts. The court then sentenced Hensley to a seventy-month prison term on the felon-in-possession conviction (count 1), and to concurrent sixty-month prison terms on the conspiracy and making false statement convictions (counts 2 and 3), to be followed by three years of supervised release.[1] Hensley filed a timely appeal.

II.

Hensley argues on appeal that the district court erred by admitting Roark's statements to investigators that implicated Hensley in the conspiracy in violation of the Confrontation Clause. Because Hensley

_____

[1] Hensley moved for a stay of his sentence pending appeal under Fed. R. Crim. P. 38(b). The district court granted the motion, finding that "there is a substantial question that the admission of the codefendant's confession was plain error[] [p]articularly as to the conspiracy and false statement charges against [Hensley because] it was the principal evidence of guilt."

4

did not object to the admission of Roark's statements during trial, our review is for plain error. See United States v. Olano, 507 U.S. 725, 732-37 (1993).

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const. amend. VI. The right of cross examination is included in the accused's confrontation rights. See Bruton v. United States, 391 U.S. 123, 127-28 (1968). In Bruton, the Supreme Court held that a defendant's Sixth Amendment right to cross-examine witnesses against him is violated when the defendant is inculpated by an out-of-court statement by a nontestifying codefendant that is admitted at their joint trial.**2** See id. at 126. "A Bruton problem exists only to the extent that the codefendant's statement in question, on its face, implicates the defendant." United States v. Locklear, 24 F.3d 641, 646 (4th Cir. 1994).

Roark's statements to Hall and Bralley--that he fabricated a story with Hensley about who owned the gun and that he lied in order to protect Hensley--do, on their face, implicate Hensley in the conspiracy to make false statements and the substantive offense of making false statements to a BATF agent. See id.; United States v. Brooks, 957 F.2d 1138, 1146 (4th Cir. 1992) (finding that Bruton applies only where nontestifying codefendant's statement is "facially incriminating"). Because Roark did not testify at his joint trial with Hensley, his "powerfully incriminating extrajudicial statements" could not be tested by cross-examination. See Bruton, 291 U.S. at 135-36. There-

_____

**2** This court has held, however, that Bruton does not apply if the nontestifying codefendant's statement is admissible as a nonhearsay statement under Fed. R. Evid. 801(d)(2)(E). See United States v. Shores, 33 F.3d 438, 442 (4th Cir. 1994). We assume, without deciding, that independent evidence of a conspiracy is required. See United States v. Neal, 78 F.3d 901, 905 (4th Cir. 1996); Fed. R. Evid. 801 advisory committee note. Absent Roark's statements admitted through Hall's and Bralley's testimony, there is no independent evidence to corroborate the existence of a conspiracy. See Neal, 78 F.3d at 905. Additionally, the confession by Roark was obviously not a statement in furtherance of the conspiracy. Because Roark's statements were not admissible under Rule 801(d)(2)(E), the rule in Bruton applies. See Shores, 33 F.3d at 442.

5

fore, a violation of Hensley's Sixth Amendment rights occurred. See id. at 126.

The admission of Roark's statements against Hensley therefore was error, and the error was plain. See Olano, 507 U.S. at 732-37. Because the statements were improperly admitted and resulted in Hensley's convictions for conspiracy to make false statements and making a false statement, we find that the admission of the statements was not harmless error. See Idaho v. Wright, 497 U.S. 805, 823 (1990) (applying harmless error analysis to Confrontation Clause violations); see also Neder v. United States, 527 U.S. 1, ___, 119 S. Ct. 1827, 1837 (1999) (stating that "test for determining whether a constitutional error is harmless . . . is whether it appears`beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained'") (quoting Chapman v. California , 386 U.S. 18, 24 (1967)). Olano's third prong therefore is satisfied--that is, Hensley's substantial rights were affected by the admission of Roark's statements. Finally, we exercise our discretion to notice the error because the forfeited error "`seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Olano, 507 U.S. at 732. We therefore vacate Hensley's convictions and sentences for conspiracy and making a false statement and remand to the district court for further proceedings.**3** We affirm the district court's judgment in all other respects.

III.

Accordingly, we affirm in part, vacate in part, and remand. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED
_____
**3** In light of our holding, we express no opinion regarding Hensley's remaining claims on appeal.

6